**BLUE RIDGE BANK AND TRUST CO., Trustee of Leo Walker Testamentary Trust, Respondent,**

v.

**Carolyn McFALL, et al., Respondent;**

**Diane Hall Personal Representative of the Estate of Joan Anderson, Defendant;**

**Leslie M. Shaw, II, Executor of the Estate of Richard Renz, Deceased, Appellant.**

**Nos. WD 65555, WD 65556.**

Missouri Court of Appeals,
Western District.

Oct. 3, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 21, 2006.

Application for Transfer Denied
Dec. 19, 2006.

Robert Allan Stopperan, Stephen P. Horn, William Harrison Reynolds, Kansas City, MO, for appellant.

Scuyler M.P. Kurlbaum, Jeffrey Mitchell Rinne, Deron Alvin Anliker, Overland Park, KS, Jack C. Terry, Daniel Thomas Jeffers, Ronald Gregory Byers, Independence, MO, Kim Susan Summers, Janet Ivy Blauvelt, Kansas City, MO.

Robert C. Doctor, Robert Hersh, Judith Hersh Clark, pro se.

Before JAMES M. SMART, JR., ROBERT G. ULRICH, and LISA WHITE HARDWICK, JJ.

JAMES M. SMART, JR., Judge.

Leslie M. Shaw, II, personal representative of the estate of Richard Renz, deceased, appeals the judgment of the Probate Division of the Circuit Court awarding distribution of assets from trusts created by Ruby and Leo Walker to their heirs at law. Mr. Shaw argues on appeal that the assets should instead

be distributed to the estate of Richard Renz.[1]

At issue is whether the language of the trusts demonstrates an intention that the interest given Richard Renz was to vest upon his reaching the age of thirty-five, or whether the language implied an additional condition of surviving his mother for his interest to vest. That issue determines the course of distribution of the residuary of both trusts. We hold that the documents indicate that the interest was to vest upon Mr. Renz attaining the age of 35, which means that the assets must be distributed to the estate of Richard Renz.

### Procedural and Factual Background

Blue Ridge Bank and Trust Co. ("Blue Ridge"), trustee for both the Ruby Renee Walker Testamentary Trust ("Ruby's Trust") and the Leo N. Walker Testamentary Trust ("Leo's Trust"), filed a petition for instructions concerning the distribution of the trust assets on March 28, 2002. Ruby's Trust was created under her Last Will and Testament dated April 3, 1970. Leo's Trust was created under his Last Will and Testament also dated April 3, 1970. Ruby and Leo both died in 1977, and their trusts were established. Ruby and Leo's grandson, Richard, died in 1985. Their daughter, Joan, died in 2001.

The wills were reciprocal as they each contained a marital share and a residuary share. The first spouse to die, Ruby, passed the maximum allowed under the federal estate taxes to her husband in the marital share while the remainder of her assets went to the residuary share.[2] When Leo died, all of his assets passed into the residuary share. The residuary shares in the trusts formed the assets in

the trusts at issue in this case. As of March 2002, the assets in both trusts were worth approximately $740,000.00.

The texts of each of the wills forming the trusts are nearly identical in how they distribute the income and principal. During the lifetime of Leo's and Ruby's daughter, Joan Anderson, a/k/a Joan May Zuest ("Joan"), if she did not predecease her parents, the Trustee was to pay to her, not less than quarter-annually, all of the net income from the trust assets until her death. Joan had no power to invade principal. The principal was to be held for distribution to Richard if he survived to age 35. If Richard had reached his twenty-eighth birthday by the time of Joan's death, one-half of the trust assets were to be distributed to Richard outright. If Richard had reached his thirty-fifth birthday by the time of Joan's death, the remaining assets were to be distributed to him free and clear of trust. If Richard did not survive to age 35, the principal was to benefit any issue of Richard. If Richard left no issue, it was to go to the respective heirs at law of Leo and Ruby.

Ruby's Trust, after some specific bequests, created a residuary estate to be held in trust for the benefit of her husband for the balance of his life. Article VI then provided:

> 3. Upon the death of my said husband, LEO N. WALKER, or upon my death if he does not survive me, the Trustee shall continue to hold said trust estate as then constituted, including principal and undistributed income, in trust, and shall manage, invest and reinvest the same and dispose of the net income and principal thereof as follows:

---

**1.** Diane Hall, personal representative of Joan Anderson, also appealed. After the cases were consolidated, she dismissed her appeal.

**2.** There were other assets distributed by the wills outside of the trusts. Only the distribution of the assets in the trusts are at issue in this case.

(a) While my said daughter, JOAN MAY ZUEST, is living, the Trustee shall pay over to her, not less often than quarter-annually, all of the net income of the trust for her lifetime.

(b) Upon the death of my said daughter, or upon my death if my said husband and daughter shall predecease me, the Trustee shall continue to hold such trust estate as then constituted, including principal and any undistributed income, in trust, and shall manage, invest and reinvest the same and dispose of the net income and principal thereof as follows:

(i) The Trustee shall pay to or for the benefit of my grandson, RICHARD RENZ, such sum or sums as the Trustee, in its sole and absolute discretion, shall determine are needed for the comfortable maintenance, support and welfare of said grandson. Such payment shall be made from the income of such trust estate to the extent that such income is available, and any deficiency shall be paid out of principal.

(ii) As my said grandson, RICHARD RENZ, attains the age of twenty-eight (28) years, the Trustee shall distribute to him one-half (1/2) of the trust estate as it is then constituted, including principal and undistributed income, if any, and shall continue to hold the balance of such trust estate in trust hereunder as before. As my said grandson attains the age of thirty-five (35) years, the Trustee shall distribute to him the entire remaining balance and any undistributed income.

(iii) If my said grandson, RICHARD RENZ, shall have attained the age of twenty-eight (28) years at the time of the death of my said daughter, or at the time of my death should my said husband and daughter predecease me, my said grandson, RICHARD RENZ, shall be paid one-half (1/2) of the trust estate hereunder outright, free and clear of trusts, and the Trustee shall hold only the remaining balance of such trust estate pursuant to the terms hereof. If my said grandson shall have attained the age of thirty-five (35) years at the time of the death of my said daughter, or at the time of my death should my said husband and daughter predecease me, my said grandson shall be paid the entire balance of the trust estate hereunder, free and clear of trust, and no trust shall be allocated or created hereunder for said grandson.

(iv) If my said grandson should die prior to attaining the age of thirty-five (35) years, the trust estate or portion thereof at such time held for his benefit hereunder, if any, shall be paid over and distributed to his issue, per stirpes, or, if my said grandson should die without issue, to such person or persons, in the shares and proportions in which my Administrator would have been required to distribute the same had I then died intestate, a resident of the State of Missouri, and possessed of such assets at the time of my death. If my said grandson should predecease me, the trust estate created by this Article shall terminate upon the death of my said daughter, JOAN MAY ZUEST, (or upon the death of my said husband, LEO N. WALKER, if both my said daughter, JOAN MAY ZUEST, and my said grandson, RICHARD RENZ, shall predecease me) and the assets then comprising the trust estate, including principal and undistributed income, shall be paid over and distributed, subject to all the provisions of this Will, to the issue of my said grandson, RICHARD RENZ, per stirpes, or, if my said grandson should die without issue, to such person or persons, in the shares and proportions in which my Administrator

would have been required to distribute the same had I then died intestate, a resident of the State of Missouri, and possessed of such assets at the time of my death.

The trust went on to provide for the amount distributable to any minor to be retained in trust for the benefit of the minor until age 21 is attained.

* * *

In relevant part, Leo's Trust essentially mirrors Ruby's trust, stating:

(b) Upon the death of my said wife, RUBY RENE WALKER, or upon my death, if she does not survive me, the Trustee shall continue to hold said trust estate as then constituted, including principal and any undistributed income, in trust, and shall manage, invest and reinvest the same and dispose of the net income and principal thereof as follows:

(i) If my daughter, JOAN MAY ZUEST, is then living, the Trustee shall distribute to her, free and clear of trust, any and all shares of capital stock then held by the Trustee in my floral business corporation (maintaining its principal place of business at 10908 Winner Road, Independence, Missouri), or, if my floral business shall be unincorporated at such time, any and all tangible personal property, including, but not limited to, business fixtures, equipment, trucks, and inventory, then being used in or directly connected with the operation of my floral business at the aforesaid address.

(ii) While my said daughter, JOAN MAY ZUEST, is living, the Trustee shall pay over to her, not less often than quarter-annually, all of the net income from the remainder of the trust assets, for her lifetime.

(c) Upon the death of my said daughter, or upon my death if my said wife

and daughter shall predecease me, the Trustee shall continue to hold such trust estate as then constituted, including principal and any undistributed income, in trust, and shall manage, invest and reinvest the same and dispose of the net income and principal thereof as follows:

(i) The Trustee shall pay to or for the benefit of my grandson, RICHARD RENZ, such sum or sums as the Trustee, in its sole and absolute discretion, shall determine are needed for the comfortable maintenance, support and welfare of said grandson. Such payment shall be made from the income of such trust estate to the extent that such income is available, and any deficiency shall be paid out of principal.

(ii) As my said grandson, RICHARD RENZ, attains the age of twenty-eight (28) years, the Trustee shall distribute to him one-half (1/2) of the trust estate as it is then constituted, including principal and undistributed income, if any, and shall continue to hold the balance of such trust estate in trust hereunder as before. As my said grandson attains the age of thirty-five (35) years, the Trustee shall distribute to him the entire remaining balance of the trust estate as then constituted, including principal and any undistributed income.

(iii) If my said grandson, RICHARD RENZ, shall have attained the age of twenty-eight (28) years at the time of the death of my said daughter, or at the time of my death should my said wife and daughter predecease me, my said grandson, RICHARD RENZ, shall be paid one-half (1/2) of the trust estate hereunder outright, free and clear of trusts, and the Trustee shall hold only the remaining balance of such trust estate pursuant to the terms hereof. If my said grandson shall have attained the age of thirty-five (35) years at the time

of the death of my said daughter, or at the time of my death should my said wife and daughter predecease me, my said grandson shall be paid the entire balance of the trust estate hereunder, free and clear of trusts, and no trust shall be allocated or created hereunder for said grandson.

(iv) If my said grandson should die prior to attaining the age of thirty-five (35) years, the trust estate or portion thereof at such time held for his benefit hereunder, if any, shall be paid over and distributed to his issue, per stirpes, or, if my said grandson should die without issue, to such person or persons, in the shares and proportions in which my Administrator would have been required to distribute the same had I then died intestate, a resident of the State of Missouri, and possessed of such assets at the time of my death. If said grandson should predecease me, the trust estate created by this paragraph 4 of Article II shall terminate upon the death of my said daughter, JOAN MAY ZUEST, (or upon the death of my said wife, RUBY RENE WALKER, if both my said daughter, JOAN MAY ZUEST, and my said grandson, RICHARD RENZ, shall predecease me) and the assets then comprising the trust estate, including principal and undistributed income shall be paid over and distributed, subject to all the provisions of this Will, to the issue of my said grandson, RICHARD RENZ, per stirpes, or if my said grandson should die without issue, to such person or persons, in the shares and proportions in which my Administrator would have been required to distribute the same had I then died intestate, a resident of the State of Missouri, and possessed of such assets at the time of my death.

* * *

Richard died testate in San Francisco, California, on August 2, 1985. He was not survived by spouse or issue. He was thirty-six years old. His will was filed with the San Francisco, California, Superior Court on August 28, 1985. No proceedings were conducted as to the will until 2003, after proceedings began in Missouri following Joan's death. Richard's will was admitted to probate in December 2003, under California law. Leslie M. Shaw, II, executor of Richard's estate, intervened in the current action in September 2003, and again, after being appointed executor, in February 2004.

Joan died testate on July 11, 2001, and her will was admitted to probate on August 11, 2001, in Jackson County, Missouri. Diane Hall was appointed Personal Representative of her estate and intervened in the current action on July 3, 2002.

Respondents Carolyn McFall, *et al.*, were Leo's intestate heirs at the time of his death or his heirs at law. Respondents Robert C. Doctor, *et al.*, were Ruby's intestate heirs at the time of her death or her heirs at law. All these parties may be collectively referred to as "respondents."

On December 11, 2002, Diane Hall, Joan's Personal Representative, filed a motion for summary judgment. Her motion requested a judgment providing for distribution under the first possible distribution approach outlined in Blue Ridge's petition. The approach requested would distribute all of the trust assets to Joan's estate.

In January of 2003, Ruby's intestate heirs sought, in two separate motions, summary judgment directing distribution of the assets contained in Ruby's and Leo's trusts to the respective heirs at law. The estate of Joan Anderson also sought a ruling directing distribution to that estate.

On April 22, 2003, then Probate Judge John Borron entered an interlocutory judgment that determined "that the bequests to Richard Renz contained in both wills did not condition the vesting of his interest on his survival of Joan Anderson." The court found that the only condition specified as to Mr. Renz's interest vesting was living to the age of thirty-five, which Mr. Renz did. As a result, the court determined that distribution should proceed to Richard's estate or heirs at law. The court could not make a final judgment because the motions for summary judgment did not contain sufficient facts to determine who should inherit from Richard.

On March 11, 2004, Mr. Shaw, executor of Richard's estate, filed a motion requesting a judgment providing for distribution of the trust assets to the estate of Richard Renz as his interest had vested upon reaching the age of thirty-five. In June of 2004, after the investiture of Kathleen Forsyth as Judge of the Probate Division following the retirement of John Borron, the heirs at law of Ruby and Leo Walker renewed their motion for summary judgment. Their argument centered on the fact that Richard predeceased Joan, which, they argued, resulted in Richard's interest failing to vest. Thus, they sought distribution of the trust assets to the heirs at law.

On February 1, 2005, Judge Forsyth entered a judgment as to the distribution of the testamentary trust and ruled on all pending motions. The court determined that Judge Borron's interlocutory ruling had been partially correct and partially incorrect. The court confirmed that Judge Borron's ruling had accurately determined and declared the law as to the interest of Joan's estate. The court disagreed, however, as to Judge Borron's interlocutory judgment to the extent that it determined that Richard's interest vested when he reached age 35. In essence, Judge Forsyth determined that in order for Richard's interest to vest it was required that he both (1) reach the age of thirty-five, and (2) survive Joan. As a result, the court directed distribution of the trust assets to the heirs at law. This appeal follows.

## Standard of Review

Review of an appeal from a grant of summary judgment is essentially *de novo*. *Estate of Blodgett v. Mitchell*, 95 S.W.3d 79, 81 (Mo. banc 2003). Summary judgment is appropriate where there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. Rule 74.04(c)(6). "The propriety of summary judgment is purely an issue of law." *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). All parties generally agree upon the facts of the case; the disagreement is over the interpretation of the language of Ruby's and Leo's Trusts. Thus, this is a question of interpretation of the language of the will based on the testator's intent. Therefore, our review is *de novo*. *Estate of Straube v. Barber*, 990 S.W.2d 40, 44–45 (Mo.App. 1999).

## Analysis

As a starting point in any analysis of a testamentary document, we note that the paramount rule of will or trust construction is to discern the intent of the settlor.[3] *First Nat'l Bank of Kansas City v. Waldron*, 406 S.W.2d 56, 58 (Mo.1966); *Scullin v. Mercantile–Commerce Bank & Trust Co.*, 361 Mo. 337, 234 S.W.2d 597,

---

**3.** Missouri courts generally use the same rules for construction of both wills and trusts. *First Nat'l Bank of Kansas City v. Hyde*, 363

S.W.2d 647, 653 (Mo.1962); *Theodore Short Trust v. Fuller*, 7 S.W.3d 482, 488 (Mo.App. 1999).

601 (1950). Such intention must be ascertained from the instrument as a whole, *First Nat'l Bank of Kansas City v. Hyde,* 363 S.W.2d 647, 652 (Mo.1962); *Commerce Bank, N.A. v. Blasdel,* 141 S.W.3d 434, 443 (Mo.App.2004), and must be adhered to unless it conflicts with some positive rule of law. *Waldron,* 406 S.W.2d at 58; *Scullin,* 234 S.W.2d at 601.

■ The intent of the settlor is to be determined from the four corners of the instrument, *Scullin,* 234 S.W.2d at 601; *Commerce Bank,* 141 S.W.3d at 444, and the court considers the instrument as a whole and does not give any clause undue preference. *Theodore Short Trust v. Fuller,* 7 S.W.3d 482, 488 (Mo.App.1999); *Home of Hope, Inc. v. McDonald,* 942 S.W.2d 926, 931 (Mo.App.1997).

■ Discerning whether there is an implied condition of survivorship can be a very difficult issue to resolve. In 1824 the Chief Justice of the Massachusetts Supreme Court stated:

Perhaps no question can arise in the course of legal inquiries more doubtful in its nature or less referable to fixed and certain rules and principles, than whether the words of a devise or bequest constitute a vested or contingent remainder. Much stress has been laid on particular words, to which it is possible the testator ascribed no particular force or meaning; and though in all the decisions the courts profess to seek for the intent of the testator, yet as they are bound to confine themselves to the instrument itself to ascertain that intent, and as the same expressions are apt to convey a different sense or meaning to differently constructed minds, perhaps there is no branch of the law which falls so far short of certainty as this.

*Shattuck v. Stedman,* 19 Mass. 468, 2 Pick 468, 469 (1824). The fact that our courts must be confined to the instrument in question can at times be a comfortable guide in resolving the matter, and at other times it can create a sense of frustration resulting from a feeling that the decedent's true intent may be eluding ascertainment. However, where the language is clear and of well-defined force and meaning, it must stand as written, *Hyde,* 363 S.W.2d at 653; *Commerce Bank,* 141 S.W.3d at 444, and a testator is presumed to know and intend the legal effect of the language he uses. *Hyde,* 363 S.W.2d at 653; *Theodore Short Trust,* 7 S.W.3d at 488. Unless the context of a will or trust indicates a different meaning of a word, the word will be interpreted according to its plain, ordinary meaning. *Gardner v. Vanlandingham,* 334 Mo. 1054, 69 S.W.2d 947, 950 (1934); *Estate of Straube,* 990 S.W.2d at 45. If the language of the will is clear, there is no need to look to rules of construction; the courts cannot rewrite a will using rules of construction. *Boone County Nat'l Bank v. Edson,* 760 S.W.2d 108, 111 (Mo. banc 1988); *Estate of Carter v. Carter,* 404 S.W.2d 693, 695 (Mo.1966). We believe these principles, as applied to the instruments before us, will guide us to a principled resolution of the conflict in this case.

■ Examination of Ruby's and Leo's wills indicates that the language is consistent with the proposition that the residuary interest was intended to be a gift to Richard once he reached the age of thirty-five, though he would have to wait until the death of Joan (because of her life estate in the income) to take possession of it. The trust provides that if Joan should die before Richard reaches age 28, one-half of the trust is to be distributed to Richard upon attaining age 28. If Joan should die before he reaches age thirty-five, the assets (or half thereof if she should die before he reaches age 28) is to remain in trust for his benefit until he reaches thirty-five. If Joan should not die before he

reaches age thirty-five (as actually occurred), the assets continue in trust so that income will be generated for Joan's benefit. The principal of the trust apparently was to be Richard's once he reached thirty-five, subject only to Joan's life interest on the income.

Looking to Ruby's Trust, for example, the language of the trust first says in Article VI, Section 3(b)(ii), that Richard is to be given half of the trust principal at the age of twenty-eight. It then goes on to say that Richard is then to be given the balance once he reaches the age of thirty-five. No qualifications of his interest are here made. In Section 3(b)(iii) the instrument states similarly that Richard is to be paid half of the trust once he reaches the age of twenty-eight, if he reaches that age by the time of Joan's death (or, if Joan predeceases the testator, at the time of the testator's death). We must regard the use of these two sections as significant. In Section 3(b)(ii), the gift to Richard was *made*, and in Section 3(b)(iii), the gift was *qualified* by noting that he could not take possession of the gift until the death of the last to die of Joan or the testator. The instrument also states that if Richard reached thirty-five at the time of the death of Joan, he was to take "free and clear of trust." This indicates that he was to take at the age of thirty-five, although the possession of his interest would be subject to the continuance of the income benefit for Joan or for the testator or spouse, unless they were already deceased. All of this language tends to indicate that the principal of the trust fund was intended to be a gift to Richard once he reached the age of thirty-five, subject only to the fact that he could not enjoy the possession of it or the interest from it until the preceding life income estate was ended. The only condition of the creation of the gift, however, was that he survive to age thirty-five.

We agree, as we have already noted, that the paramount rule of construction is the grantor's intent. Any effort to determine the decedent's intent apart from what is expressed, upon the assumption that there was a failure on the part of the decedent to anticipate contingencies, or on the part of the drafter to express an alternative disposition in such case, may lead into troubled waters. While sometimes we must venture into those waters because the text of the documents is so problematic as to be inadequate to resolve the issue of intent (as the Probate Judge thought was true in this case), we disagree that this is a case which calls forth such a requirement.

We understand here the argument of the respondents that Ruby and Leo, if consulted after Richard's early death without issue (had they still survived with capacity to that point), would likely have redrafted their documents to express a preference for their assets to stay within bloodlines rather than be paid to Richard's estate. The court here correctly discerned that the estate documents could have been drafted better in certain respects in order to clarify the intent of Ruby and Leo. In particular, the court noted that Leo's and Ruby's wills failed to provide for all possible orders of death. The court also noted that Leo's and Ruby's wills provide for an alternate disposition of trust assets to the respective heirs at law in the event that Richard dies before age thirty-five and neither he nor his descendants are living at the termination of the trusts. The court also believed that the fact that neither Ruby nor Leo gave to their spouse, to Joan, or to Richard any power to invade trust principal indicated an intention to keep the assets within the respective family bloodlines. We do not disagree with the notion that these are pertinent observations of some value. We do not agree, however, that we can say that these observations can override the expressed lan-

guage so as to impliedly condition the gift upon Richard surviving Joan.

It is not absurd to suggest that Ruby and Leo, as the language of the instruments suggest, believed at the time the trusts were drafted that if Richard should die after attaining thirty-five years of age, he would by that time have reached a sufficient maturity that he should be entitled to, as well as be able to, govern his own estate distribution without the need of Ruby and Leo to restrict it according to their wishes. Taking the language at face value, that is what it must reasonably be understood to say. We believe the capable Probate Judge failed to note the significance of the exact language employed, and to credit it with its ordinary meaning, because the court assumed there was a mistake here. We hope to illustrate more fully herein why we cannot agree that we can imply a condition that Richard survive Joan's death in order for him or his estate to be qualified to receive an interest from the trusts.

Leo's and Ruby's Trusts both state that if Richard "shall have attained the age of thirty-five (35) years at the time of the death of my said daughter, or upon my death if my [spouse and] daughter shall predecease me, [he] shall be paid the entire balance of the trust estate hereunder, free and clear of trust[.]" The absence of any provision affecting Richard's interest in the event he should predecease Joan after reaching thirty-five is a significant indicator that the testator's intention was to make a gift to Richard of the entire trust fund once Richard reached age thirty-five, restricted only by Joan's life interest in the trust income. There is insufficient warrant for believing, as the court did, that the absence of such a provision shows that the expressed language in question was the result of a drafting error rather than an intentional statement of

intent that the gift would be come Richard's if he survived to age thirty-five.

It could be argued that we are placing excessive emphasis on one or two clauses of the wills rather than looking to the entire text of each document. It is necessary to point out, however, that the clauses we emphasize are the clause in each document that *creates the gift* in question, and then the clause that *specifies any conditions* applicable to the gift. Also, we do not ignore the remainder of the documents in question. We do not agree, however, that the hints provided by the substance of other provisions are incompatible with the expressed notion that the only condition of the gift was that Richard survive to age thirty-five.

In a vested remainder, legal title comes to reside in an identifiable person, although his possession may be postponed. *Theodore Short Trust,* 7 S.W.3d at 489. If we think of the gift as being effective on Ruby's and Leo's deaths, with the enjoyment postponed, the fact that the legatee did not survive the period of the preceding interest does not defeat the gift. See SIMES & SMITH, *The Law of Future Interests,* section 575, (3d ed.2003). "Remainder estates do not necessarily become contingent because they are limited to take effect on the death of a life tenant. And adverbs of time such as 'after' or 'at' often denote when the enjoyment of an estate is to commence." *Uphaus v. Uphaus,* 315 S.W.2d 801, 805 (Mo.1958) (citation omitted).

Merely employing the phrase "at the time of the death of my said daughter, or at the time of my death should my daughter predecease me," does not denote a necessity that Richard survive Joan; in this case we believe that it denotes only that Richard's *possession* of his interest is postponed until the death of Joan. "Adverbs of time in grants creating remain-

ders are construed, absent a contrary intention, to relate to the commencement of the remainderman's enjoyment and possession of[,] and not the vesting of his title to[,] the property." *Tapley v. Dill,* 358 Mo. 824, 217 S.W.2d 369, 373 (1949). Indeed, in this case there is language that supports the belief that the intention of the settlors was only to restrict the time of Richard's possession, not the right to his interest. This is shown in Section 3(b)(ii) which states that Richard was to take at thirty-five, and makes no mention of Joan at all. The further qualification in Section 3(b)(iii) suggests that the restriction was one relating only to possession, not right.

■ It is a general rule that the law favors vested remainders where doubt exists. *Uphaus,* 315 S.W.2d at 804; *Theodore Short Trust,* 7 S.W.3d at 490. However, it is not necessary to resort to this rule because the simple definition of a contingent remainder decides the issue for us: "[a] remainder is 'contingent' if it is ... subject to an express condition precedent—*other than* the expiration of all prior interests created by the same transfer[.]" STOEBUCK & WHITMAN, *The Law of Property,* section 3.9 (3d ed.2000) (emphasis added). In this case, the remainder was subject to the express condition precedent of Richard reaching the age of thirty-five. He fulfilled this contingency when he reached the age of thirty-five. The language "at the death of my said daughter" indicates only when "all prior interests created by the same transfer" would expire, and therefore, relates only to when the *possession* of his interest should take place. "The mere postponement of the time of possession or enjoyment does not make contingent a gift otherwise vested." 2 SIMES & SMITH, section 576.

The respondents rely on *Graves v. Hyer,* 626 S.W.2d 661 (Mo.App.1981), *Epley v. Epley,* 585 S.W.2d 308 (Mo.App.1979),

*First Nat'l Bank of Kansas City v. Sullivan,* 394 S.W.2d 273 (Mo.1965), and similar cases. All three cases involve an actual condition precedent of survivorship as to the vesting of a future interest though each is determined upon its own peculiar facts. *Theodore Short Trust,* 7 S.W.3d at 488; *Graves,* 626 S.W.2d at 665. "[T]he cases in which the courts imply a condition precedent of survivorship [of the future interest holder] are those in which the language as to the time of distribution actually expressed in the will, if taken literally, *cannot be carried out unless the legatee or devisee survived.*" SIMES & SMITH, *supra,* section 576 (emphasis added).

In *Graves v. Hyer,* the language of the instrument said if the testator's son (the life tenant) died "without issue," then the nearest blood kin would take. 626 S.W.2d at 662. In order for the courts to determine if the life tenant had died without issue, it was necessary for the life tenant to actually die. Thus, the language necessarily made the remainder contingent upon the life tenant's death. *Id.* That is, the gift itself (as opposed to the enjoyment of the gift) could neither be determined nor made until the death of the life tenant.

*Epley v. Epley* was a similar situation. The remainderman's interests could not vest until the death of the life tenant, because of the explicit language of the will, which said that the heirs at law would take only if the grandson (the life tenant) died "without leaving bodily heirs." *Epley,* 585 S.W.2d at 309. In that case, it was not possible until the life tenant's death to determine whether the heirs at law would take. There was a specific contingency that precluded the gift from vesting. And in *First Nat'l Bank of Kansas City v. Sullivan,* the will stated that the heirs at law were to take only if the daughter died "without issue then living." 394 S.W.2d at

275. Thus, the remainder could not vest until the death of the daughter. *Id.* Here, in contrast with all these, the *gift* could vest upon Richard's reaching age 35, although the enjoyment of it would be deferred to Joan's death.

The respondents here, the heirs at law of Ruby and Leo, were to take in only one situation under the clear language of the trust. That was to occur only when and if Richard died *before* reaching the age of thirty-five. The instrument states "[i]f my said grandson should die *prior to attaining the age of thirty-five (35) years,* the trust estate [shall] be paid over and distributed to his issue, per stirpes, or, if my grandson should die without issue, to [the heirs at law]" (emphasis added). Thus, the heirs at law have no interest unless (1) Richard had died prior to attaining the age of thirty-five and (2) Richard had died without issue. In these provisions concerning Ruby's and Leo's heirs at law, no mention is made of any different disposition in the event that Richard did not survive Joan.

Respondents argue that because Richard predeceased Joan, and thus was never able to enjoy his interest, to give the trust fund to Richard's estate (so that it is distributed outside of the family) could not be what Ruby and Leo would have intended. We disagree that it is entirely obvious that Ruby and Leo necessarily would have abhorred such a result in the abstract. For instance, if Richard had reached age thirty-five, with or without issue, then Richard had died one day later, then Joan had died one day after that, there might not be substantial objection raised to the notion that Richard's gift was vested before his death, and that the funds should go to Richard's estate. If that would not have been unthinkable, it is not clear that it should be unthinkable simply because Joan survived Richard by sixteen years. We suppose that the fact that Richard predeceased Joan by sixteen years, combined with the fact that Richard had no issue and did not leave his estate to family members, creates the belief that this disposition arguably would have greatly displeased Ruby and Leo.

In any event, in interpreting the trust, the court must look to the language of the instrument and *not* to the results to be achieved. *Commerce Bank,* 141 S.W.3d at 445; *Estate of Straube,* 990 S.W.2d at 44. Courts should not guess what the settlor might have done under certain conditions if not expressed in his will or trust. *Gardner,* 69 S.W.2d at 949; *Commerce Bank,* 141 S.W.3d at 443. Testators and settlors generally do not anticipate every potential future scenario that could affect the degree of their pleasure in the disposition. It is virtually impossible, for instance, to predict that a beneficiary might acquire a gambling addiction or marry a spendthrift, or go to prison, or leave an estate to an organization that the testator would have abominated. The courts have no right to make a new will for the testator. Courts are to ascertain what the testator meant from the words actually used. *Commerce Bank,* 141 S.W.3d at 444. Courts cannot interpret a will to make what appears to them to be a more equitable distribution. *Waldron,* 406 S.W.2d at 59; *First Nat'l Bank of Kansas City v. Stevenson,* 293 S.W.2d 362, 366 (Mo.1956). While the results here may *seem* unanticipated because Joan survived her son Richard by sixteen years, we cannot agree that the documents show that Ruby and Leo did not contemplate that Richard's estate could receive the funds at Joan's death if he reached thirty-five and then predeceased her.

We also cannot agree that because the documents made provision for heirs at law to receive the funds if Richard did not

reach age thirty-five, and because of the absence of power to invade principal during the trust, Ruby and Leo were expressing a categorical intention that Richard should not be able to control the disposition of the funds through his estate, even if he had lived to age fifty-one and had just barely predeceased Joan. The plain language of the trust says that once Richard reached the age of thirty-five, he was qualified to receive the entire balance of the trust estate. Where the language is clear and of well-defined force and meaning, it must stand as written. *Hyde*, 363 S.W.2d at 653. The language that Richard was to be paid this balance "at the time of the death of [Joan]" denoted only the time of possession, not the time of vesting. *Tapley*, 217 S.W.2d at 373.

### Attorneys' Fees

The parties have requested attorney's fees and costs for the work done in obtaining a determination and interpretation of the trusts on this appeal. Section 456.10–1004, RSMo, provides that "[i]n a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney's fees, to any party[.]" The probate division has already exercised discretion as to the attorney fee issues for services and expenses prior to appeal. We believe it is appropriate to remand these issues to the Probate Judge to allow her an opportunity to again exercise her discretion as to these motions. Accordingly, we will remand the motions to the Probate Division of the Circuit Court.

### Conclusion

For all of the foregoing reasons, the judgment is reversed. The case is remanded for entry of judgment in favor of the estate of Richard Renz in accordance with this opinion, for a determination of the motions as to attorney's fees and costs, and for any other matters as may remain as to the administration of the trusts in question.

ULRICH and HARDWICK, JJ., concur.