

# Missouri Court of Appeals

### Southern District

### Division Two

In Re: The GLENDALE LEE BECKING
TRUST, under date of February 21, 1995
as amended on December 4, 1997 and the
G.L. BECKING TRUST f/b/o CYNTHIA
BECKING

CYNTHIA BECKING, Co-Trustee,

    Plaintiff-Appellant/Respondent,

v.

DUSTIN K. NEELEY, Co-Trustee,

    Defendant-Cross-Appellant/
    Respondent,

and

LANA BECKING and COBY AYERS,

    Intervenors/Cross-Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Consolidated Nos. SD37039,
SD37048, and SD37049

**Filed: May 24, 2022**

### APPEAL FROM THE CIRCUIT COURT OF STODDARD COUNTY

Honorable John H. Shock

## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS

These consolidated appeals concern a dispute between an estranged mother and

son about the proper interpretation of a trust. Their dispute has been litigated in the form

1

of competing petitions for declaratory judgment, motions for summary judgment, and, finally, a trial on all issues not decided by the circuit court's earlier grant of partial summary judgment. We affirm in part, reverse in part, and remand the case with directions.

**Background and Procedural History**

*Pre-Trial Proceedings*

Appellant/Respondent, Cynthia Becking ("Mother"), is the daughter of Glendale Lee Becking ("Settlor") and the mother of Cross-Appellant/Respondent Dustin K. Neeley ("Son"), Settlor's grandson. Son left Mother's home at the age of 13 to live with Settlor and his wife. Intervenor/Cross-Appellant Lana Becking ("Sister") is Settlor's other daughter, Mother's sister. Intervenor/Cross-Appellant Coby Ayers is Sister's son ("Nephew").

On February 21, 1995, Settlor executed the "Trust Agreement of [Settlor]" ("Settlor's Trust") for the benefit of Settlor and his wife. Settlor later amended that document in December 1997 (as amended, "the Trust Agreement").[1] Settlor's wife was no longer living when Settlor died in 2003. Upon Settlor's death, the Trust Agreement automatically created two new trusts, one for the benefit of each of Settlor's daughters, and all of the assets in Settlor's trust were equally divided and transferred into those new trusts. One of them, the "[Settlor] Trust for the benefit of [Mother]" ("Mother's trust"), is the trust at issue in this appeal.

The Trust Agreement named Sister and Mother, along with Settlor's grandsons, Son and Nephew, as co-trustees of Settlor's trust, and Son and Nephew were also

---

[1] The Trust Agreement contains the terms that govern all of the trusts referenced in this appeal.

automatically added as co-trustees of Mother's trust when Settlor died. The Trust Agreement provided that a majority of the co-trustees could perform any act authorized by the Trust Agreement.

After Settlor's death, Sister and Nephew declined to serve as trustees of Mother's trust, leaving Son and Mother as its only trustees. Mother and Son subsequently appointed Edward Riley as a third trustee, and Mr. Riley served in that position for some time before resigning.

After Mr. Riley resigned, Mother, acting alone, purported to appoint a new trustee, John A. Clark ("Mr. Clark"), without Son's agreement. Son believed that Mother was not eligible, on her own, to appoint a trustee, and he believed that her unilateral attempt to do so was void. Son believed that the Trust Agreement reserved the power to appoint a new trustee for Mother's trust to a majority vote of Mother, Son, Sister, and Nephew – not to Mother alone.

After Son objected to the appointment of Mr. Clark, Mother and Mr. Clark filed a petition for declaratory judgment that asked the circuit court to declare legal answers to the following questions:

> Does the sole income beneficiary [(Mother)] acting alone have the authority under the terms of [the Trust Agreement] to appoint Trustees and to determine the number of Trustees to so serve?

> Does a simple majority of the currently serving Trustees have the right to make binding decisions regarding how funds are invested and where they are invested?

> Does a simple majority of the currently serving Trustees have the right to make decisions regarding the invasion of the principal of [Mother's t]rust for distribution to [Mother] as sole income beneficiary for her general well being and happiness as set out in Article 3, Paragraph C "Distribution?"

3

When Mr. Clark resigned as a purported co-trustee, Mother purported to appoint Darlene O. Young ("Ms. Young") as a co-trustee of Mother's trust. Son also opposed that purported appointment.

When Mother attempted to increase the distributions from her trust from $1,000 per month to $2,500 per month -- with the increase to be taken from trust principal -- Son disputed her ability to invade trust principal for anything other than extraordinary medical expenses.[2]

Mother and Ms. Young then filed an amended petition for declaratory judgment that requested the following:

a. A judgment declaring the vote of the majority of [c]o-Trustees on May 18, 2018, to increase [Mother's t]rust distributions from $1,000 per month to $2,500 per month as valid under Article III, Paragraph C "Distribution;"

b. Award Plaintiffs legal fees in this matter subject to R.S.Mo. § 456.10-1004;[3]

c. Order the removal of [Son] as [c]o-Trustee from [Mother's trust] because he has taken unreasonable positions regarding the interpretation and construction of [the Trust Agreement] and has deliberately attempted and has in fact flouted the will of the majority of the Trustees[.]

Son brought a counterclaim seeking a declaratory judgment that: (1) Mother is entitled to receive distributions of principal only for her extraordinary medical expenses; and (2) Mother's purported appointment of Ms. Young as the third trustee was void. Son also asked the circuit court to award him legal fees and appoint an independently-selected third trustee.

---

[2] Mother sought to increase her distribution to replace approximately $1,000 of monthly income that Mother had previously received from a recently-depleted IRA.
[3] Unless otherwise indicated, all statutory references are to RSMo 2016.

*The Partial Summary Judgment*

Shortly thereafter, Mother and Son filed competing motions for summary judgment for the relief requested in their respective petitions for declaratory judgment. In regard to the only relief awarded by the circuit court, Son's motion asserted that the provisions of the Trust Agreement limited Mother to distributions of trust income, and Settlor did not intend for Mother to be able to use principal to pay for anything other than her extraordinary medical expenses. Mother asserted that the Trust Agreement permitted an invasion of trust principal to pay for her general welfare in addition to her extraordinary medical expenses.

The circuit court denied Mother's motion in full and granted a partial summary judgment in favor of Son that declared:

> The Trustees shall pay to said Beneficiary [(Mother)] all of the net income from [Mother's trust]. In addition, the Trustees shall pay from time to time such amounts of principal as they deem proper for extraordinary medical expenses to be determined at the sole and absolute discretion of the Trustees.[4]

Ms. Young then refused to continue as the purported third trustee, and Mother filed a second amended petition that requested the appointment of James Dow ("Mr. Dow") as a third co-trustee or, in the alternative, that the circuit court appoint a third trustee.

Sister and Nephew (collectively, "Intervenors") were allowed to intervene in the suit on the ground that they were eligible to receive trust assets upon the death of Mother and Son. The parties' remaining disputes -- whether the current trustees should continue,

---

[4] The partial summary judgment was entered by a different judge previously assigned to the case.

whether the appointment of a new trustee was appropriate, and whether legal costs should be paid from "the Trust funds" -- were then tried by the circuit court.

## The Trial[5]

Mother provided the following testimony. She and Son were the current co-trustees of Mother's trust, but they have a strained relationship, and Son was hostile toward her. Mother met with Son to discuss repairs to her house, and because he had refused to allow Mother's trust to pay for those repairs, Mother wanted a third co-trustee to serve as a tiebreaker that might allow her to use trust assets to pay for repairs and other household expenses. Mother wanted to appoint Mr. Dow, a "friend from a friend[,]" to act as the third co-trustee.[6] Mother also wanted Son removed as co-trustee because she felt that he had not worked with her in regard to her trust, and she did not believe that he had her best interests in mind. Mother also confirmed that all of the income earned by Mother's trust had been promptly paid to her, and she acknowledged that if Mother's trust paid her out of its principal balance, it would result in a decrease in the income that the trust would generate. Mother also admitted that although she had claimed that Son had instructed Edward Jones to ignore Mother, those statements were false, and she had not found any evidence to support her allegation.

Son testified that he had told Mother that he was willing to pay for her household repairs out of his own pocket, but Mother's trust could not pay for them using principal because the Trust Agreement did not allow it, and doing so would decrease Mother's

---

[5] We view the evidence in the light most favorable to the circuit court's judgment, *Ivie v. Smith*, 439 S.W.3d 189, 200 (Mo. banc 2014), and other evidence is cited only to provide context for the parties' arguments on appeal.

[6] Mr. Dow testified that he was the manager of the industrial technology program at Three Rivers College and a good friend of Mother's boyfriend.

6

future income from the trust. Son testified that he was hesitant about the appointment of a third trustee because that person would be entitled to payment from Mother's trust, and he did not believe that a third trustee was necessary. Further, Son believed that he, Nephew, and Sister were the persons entitled to make the decision on whom, if anyone, would be appointed as an additional trustee.

Charlie Flannigan ("Mr. Flannigan"), a financial advisor at Edward Jones, handled the account for Settlor's trust, and now handles Mother's trust account. Mr. Flannigan testified that he had received instructions from both Mother and Son regarding investments and paying out income, and that neither had ever asked him to do anything that he would consider unusual or antagonistic.

Following the trial, the court entered an amended judgment that incorporated the grant of partial summary judgment in favor of Son and contained the following declarations:

- "[Mother] is the sole current income beneficiary and the sole adult income beneficiary of [Mother's trust]."

- "As the sole current income beneficiary of [that] trust, [Mother] has the authority and right to appoint any successor trustees pursuant to . . . the Trust Agreement."

- "The appointment by [Mother] of [Mr.] Dow as the third Trustee is hereby approved."

- "[Son] has a serious conflict of interest in serving as [t]rustee . . . . [A]ny payments which are not made to [Mother] will accrue to his benefit. [He] has instructed [Mr.] Flannigan of Edward Jones, the Financial Advisor handling the investment account, to not follow the instructions of [Mother]."

7

- "[Son] is hostile to [Mother] and has not acted as a co-trustee, but, instead, has acted in the manner of a sole trustee. The [circuit c]ourt finds that he should not continue to serve as trustee."

- "[Son], as [c]o-Trustee, shall abide by the majority rules provision of the trust as set forth in [the Trust Agreement.]"

The judgment also awarded Mother and Son $15,000 each in attorneys' fees and costs, "to be paid from the Trust funds."

Mother appeals the denial of her motion for summary judgment and the grant of partial summary judgment in favor of Son and Intervenors. Son and Intervenors ("Cross-Appellants") challenge the portions of the judgment that favored Mother.[7] We will recite additional evidence as necessary to address the parties' arguments on appeal.

**Analysis**

*Mother's Point Relied On*

Mother's sole point on appeal claims:

> The [c]ircuit [c]ourt erred in granting partial summary judgment in favor of [Son] and denying partial summary judgment in favor of [Mother] by holding that [Mother] is to receive the income from [Mother's trust] and no distributions of principal except for extraordinary medical expenses because the ruling is contrary to [Settlor]'s intent in that [the Trust Agreement] evidences a primary intent to provide for the support and welfare of [Settlor]'s daughters, [Mother] and [Sister], by providing that separate sub-trusts be created for each daughter and further stating in Article III, Paragraph C of [the Trust Agreement], that "[t]he trustees shall make discretionary payments for a person's 'needs'[,] . . . 'welfare'[,] . . . happiness, and general well-being, even to the exhaustion of [trust principal] from which such payments are made."

Mother's point on appeal is multifarious as it challenges the denial of her motion for summary judgment while also challenging the partial grant of Son's motion without

---

[7] Son and Intervenors filed consolidated briefs, and we have consolidated all parties' separate appeals.

8

demonstrating that the motions are so inextricably intertwined that the grant of one necessitated the denial of the other. *See Faries*, 628 S.W.3d at 259. A multifarious point violates Rule 84.04(d) and preserves nothing for appellate review. ***Marck Indus., Inc. v. Lowe***, 587 S.W.3d 737, 744 (Mo. App. S.D. 2019). Here, we exercise our discretion to review, *ex gratia*, Mother's challenge to the circuit court's grant of partial summary judgment in favor of Son.

*Standard of Review*

We review a grant of partial summary judgment *de novo*. ***Faries v. United Servs. Auto. Ass'n***, 628 S.W.3d 257, 259 (Mo. App. S.D. 2021); ***In re Gene Wild Revocable Trust***, 299 S.W.3d 767, 773 (Mo. App. S.D. 2009).

> [1] Facts come into a summary judgment record *only* via Rule 74.04(c)'s[8] numbered-paragraphs-and-responses framework. [2] Courts determine and review summary judgment *based on that Rule 74.04(c) record, not* the whole trial court record. [3] Affidavits, exhibits, discovery, etc. generally play only a secondary role, and then only as cited to support Rule 74.04(c) numbered paragraphs or responses, *since parties cannot cite or rely on facts outside the Rule 74.04(c) record.* [4] [S]ummary judgment rarely if ever lies, or can withstand appeal, unless it flows as a matter of law from appropriate Rule 74.04(c) numbered paragraphs and responses *alone.*

***Green v. Fotoohighiam***, 606 S.W.3d 113, 117-18 (Mo. banc 2020). This is true even when, as here, an appeal is taken from the final judgment. ***Stacy v. Bar Plan Mut. Ins. Co.***, 522 S.W.3d 914, 918 (Mo. App. E.D. 2017) (quoting ***Hihn v. Hihn***, 235 S.W.3d 64, 67 (Mo. App. E.D. 2007)).

"[A]n appellate court reviewing an entry of summary judgment—need only consult what was properly put before it by way of Rule 74.04(c) paragraphs and responses [ ("SUMF facts")]." ***Green***, 606 S.W.3d at 121. "[A]rguments … that are

---

[8] Unless otherwise indicated, all rule references are to Missouri Court Rules (2021).

9

completely disconnected from the numbered paragraph material facts in the summary judgment record, as required by Rule 74.04, are analytically useless in an appellate review that requires this court to properly apply Rule 74.04[.]" *Id.* at 120 (quoting *Great S. Bank v. Blue Chalk Constr., LLC*, 497 S.W.3d 825, 835 (Mo. App. S.D. 2016)).

Here, Mother's Statement of Facts cites only nine SUMF facts, and none of them support her claims of error. Mother's argument relies entirely upon her statements regarding Settlor's intent, but nothing she alleges about his supposed intention is supported by reference to the SUMF facts. Mother's failure to cite and rely solely upon the SUMF facts renders her Statement of Facts neither fair nor concise, *see* Rule 74.04(c), renders her argument analytically useless, *see Blue Chalk Constr.*, 497 S.W.3d at 835, and is fatal to her appeal. Mother's point fails.

*Cross-Appellants' Points 1 and 2*

Cross-Appellants' first and second points both address the circuit court's appointment of Mr. Dow as trustee and the purported removal of Son as trustee. As these points are governed by the same standard of review, we address them together.

*Standard of Review & Governing Principles of Law*

Appellate review of bench-tried cases requires the judgment to be affirmed unless no substantial evidence supports it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

> The paramount rule in construing a trust is to determine the settlor's intent. *Blue Ridge Bank & Trust Co. v. McFall*, 207 S.W.3d 149, 156 (Mo. App. 2006). We ascertain the settlor's intent from the "four corners" of the trust instrument, reading the trust instrument as a whole and not giving any particular clause "undue preference." *Id.* at 157. The settlor "is presumed to know and intend the legal effect of the language he

10

[or she] uses." *Id.* Unless the context "indicates a different meaning of a word, the word will be interpreted according to its plain, ordinary meaning." *Id.*

*Simon v. Myers*, 570 S.W.3d 103, 108 (Mo. App. W.D. 2018).

Point 1 claims:

The trial court erred in approving the appointment by [Mother] of [Mr.] Dow as a Successor or additional Trustee . . . because the appointment of [Mr.] Dow as Trustee by [Mother] alone was not an appointment by a majority of the adult eligible income beneficiaries . . . as was required by [the Trust Agreement], . . . in that the trial court incorrectly interpreted as a matter of law, . . . the Trust Agreement to determine that [Mother], alone, as the sole current income beneficiary, had the authority and right to appoint any Successor Trustees . . . [,] and, in that the trial court disregarded the objection of the majority of the adult eligible income beneficiaries to the appointment of [Mr.] Dow as a third Trustee.

We agree.

The circuit court (erroneously) ruled that, "[a]s the sole current income beneficiary of the Trust, [Mother] has the authority and right to appoint any successor trustees pursuant to Article IV.D.3 of the Trust Agreement[.] The appointment by [Mother] of [Mr.] Dow as the third Trustee is hereby approved."

The analysis of this issue by the circuit court fails to recognize the important distinction created by the Trust Agreement's use of two different phrases: "adult income beneficiary" and "adult *eligible* income beneficiary"; both of which appear in various places in the Trust Agreement but are not defined therein.

The relevant provision governing the appointment of successor and additional trustees states:

Upon such resignation or removal, or if a Trustee ceases to be Trustee for any other reason, I [(Settlor)] (or [i]f I am then disabled, my spouse, or, if my spouse is disabled, **a *majority* of the adult *eligible* income beneficiaries) may appoint, in writing, any persons and/or corporations as successor Trustees or additional co-Trustees to serve**

11

**in the number and order so named.** If, at any time, there is no Trustee acting hereunder and no successor is appointed or a successor so appointed fails to qualify within a reasonable period of time, then a court of competent jurisdiction shall appoint such successor Trustee. (Emphasis added.)

As Settlor and his spouse are deceased, the Trust Agreement allows "a *majority* of the adult *eligible* income beneficiaries" to appoint a trustee (emphasis added).

In Missouri, trusts are governed by Missouri Revised Statutes chapter 456, the Missouri Uniform Trust Code ("MUTC").[9] Section 456.1-103 provides various definitions that pertain to terms used in sections 456.1-101 to 456.11-1106 but does not specifically define "adult eligible income beneficiary." Section 456.1-103(3) does define "[b]eneficiary" as a person that: "(a) has a present or future beneficial interest in a trust, vested or contingent; or (b) in a capacity other than that of trustee, holds a power of appointment over trust property." Section 456.1-103(20) defines "[q]ualified beneficiary" as "a beneficiary who, on the date the beneficiary's qualification is determined: (a) is a permissible distributee; (b) would be a permissible distributee if the interests of the permissible distributees described in paragraph (a) of this subdivision terminated on that date; or (c) would be a permissible distributee if the trust terminated on that date[.]"

Because neither the MUTC nor the Trust Agreement defines the terms "adult income beneficiary" and "adult eligible income beneficiary[,]" traditional rules of trust interpretation require that "the word's dictionary definition supplies its plain and ordinary meaning." ***Wilkinson v. Native Am. Rights Fund***, 533 S.W.3d 739, 741 (Mo. App. W.D. 2017).

---

[9] Article III.H provides that the Trust Agreement "is governed by the laws of the state of Missouri."

12

An "adult" is "[s]omeone who has attained the legal age of majority, generally . . . 18[.]" ADULT, Black's Law Dictionary (11th ed. 2019). An adult is "eligible" if he or she is "qualified or permitted to do or be something[.]" *Eligible*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/eligible.[10] An "income beneficiary" is defined as "[a] person entitled to income from property; esp., a person entitled to receive trust income." BENEFICIARY, Black's Law Dictionary (11th ed. 2019).

By using the term "adult eligible income beneficiaries" in the trustee appointment provision of the Trust Agreement – instead of "adult income beneficiary"– we can determine that Settlor intended to vest the power to appoint trustees in multiple people, as opposed to giving that power exclusively to Mother, the sole adult income beneficiary of Mother's trust.[11] And that provision of the Trust Agreement refers to "a *majority* of the

---

[10] Because "eligible" means "qualified[,]" we look to the MUTC's definition of "[q]ualified [b]eneficiary" to provide guidance herein.

[11] As applicable here, the Trust Agreement provides that

> [a]ny trust principal remaining at the death of the beneficiary [(Mother)] shall be distributed to the Beneficiary's [(Mother's)] then living descendants, per stirpes, or, if none, to my [(Settlor's)] living descendants, per stirpes, provided, however, that any property distributable to a person who is the income beneficiary or an eligible income beneficiary of a trust under this Agreement shall instead be added to the principal of such trust.

The Trust Agreement also provides that

> [t]he Trustees shall hold any share distributable to a grandchild or more remote descendant . . . of mine in a separate trust and shall pay or apply the net income therefrom to or for Beneficiary's benefit, together with all or any part of the trust principal that the Trustees in their discretion consider advisable for the Beneficiary's or the Beneficiary's dependent's welfare.

The Trust Agreement further provides for a graduated schedule of principal distributions of the separate trusts for grandchildren or more remote descendants according to certain milestone ages, all while receiving mandatory income distributions yearly until the full balance of the separate trust is distributed at age thirty-five. Therefore, while Mother and Sister are the current adult income beneficiaries of their respective trusts, it is possible that many of the trust beneficiaries are "adult eligible income beneficiaries" on the date that the beneficiary's eligibility to act thereunder is determined. We cannot discern from the record

13

adult eligible income beneficiaries[,]" indicating an intent by Settlor to have more than one person making such decisions (emphasis added). Said another way, had Settlor intended only the person currently receiving trust income, the "income beneficiary," to dictate the appointment of trustees, he would not have included a provision that requires a majority of the "adult eligible income beneficiaries" to consent to such an appointment.

The Trust Agreement also juxtaposes these two terms, signifying an intent to refer to two different groups of people. For example, it provides that "any property distributable to a person who is the income beneficiary *_or_* an eligible income beneficiary of a trust under this Agreement shall instead be added to the principal of such trust." (Emphasis added.)

Finally, another provision provides that after Settlor's death, "[a]ny Trustee may be removed . . . by an adult eligible income beneficiary with the concurrence of at least one other adult presumptive remainderman" – yet another indication that Settlor intended that the decision to remove or appoint a trustee could not be made by any one person acting alone.

By failing to recognize the distinction between the terms "adult income beneficiary" and "adult eligible income beneficiaries[,]" the circuit court misinterpreted the Trust Agreement as a matter of law when it concluded that, "[a]s the sole current income beneficiary of the Trust, [Mother] has the authority and right to appoint any successor trustees pursuant to Article IV.D.3 of the Trust Agreement[.]" When applying the correct interpretation of the Trust Agreement, only a majority of the adult eligible income beneficiaries may appoint, in writing, any successor or additional trustees.

whether it has all of the required information necessary to determine all beneficiaries of the Trust Agreement who are "adult eligible income beneficiaries" as of the date of the issuance of this opinion.

14

Because Mother had no authority, on her own, to appoint Mr. Dow as a trustee, the circuit court erred, to the prejudice of Cross-Appellants, when it "approved" Mother's appointment of Mr. Dow as an additional trustee of Mother's trust. Point 1 is granted.

*Point 2*

Cross-Appellants' second point claims the circuit court erred in removing Son as co-trustee because no substantial evidence supported Mother's assertion that he had violated the terms of the Trust Agreement, the Trust Agreement does not contain any provision that would allow Son to be removed by Mother alone, and the circuit court did not have the power to do so.[12] Mother concedes that this point should be granted, and we agree.

The circuit court's (erroneous or inconsistent) findings on this issue are:

- "[Son] has a serious conflict of interest in serving as [t]rustee . . . . [A]ny payments which are not made to [Mother] will accrue to his benefit. [He] has instructed [Mr.] Flannigan of Edward Jones, the Financial Advisor handling the investment account, to not follow the instructions of [Mother]."

- "[Son] is hostile to the beneficiary [(Mother)] and has not acted as a co-trustee, but, instead, has acted in the manner of a sole trustee. The [circuit c]ourt finds that he should not continue to serve as trustee."

- "[Son], as Co-Trustee, shall abide by the majority rules provision of [the Trust Agreement.]"[13]

---

[12] The circuit court did not purport to remove Son as trustee pursuant to section 456.7-706.

[13] We use the term "purported removal" of Son in this opinion as these last two findings are inconsistent on their face and make it impossible to determine with certainty whether the circuit court intended Son to go or stay.

15

The parties agree that no substantial evidence was adduced in support of Mother's allegations of Son's wrongdoing while serving as a trustee, and counsel for Mother conceded during oral argument that the proposed judgment Mother sent to the circuit court was not intended to include any language regarding Son's alleged malfeasance and removal as trustee.

"A judgment must be based on the evidence presented[,]" *Empire Dist. Elec. Co. v. Coverdell*, 344 S.W.3d 842, 852 (Mo. App. S.D. 2011) (quoting *State ex rel. Langiano v. Langiano*, 3 S.W.3d 886, 888 (Mo. App. S.D. 1999)), and a judgment that is not supported by substantial evidence must be reversed, *Murphy,* 536 S.W.2d at 32. Point 2 is granted.

*Cross-Appellants' Point 3*

This point claims the circuit court erred in awarding attorney fees to Mother, to be paid from "the Trust estate[,]" because "the appointment of an additional Trustee was unnecessary and constituted unnecessary expense and burden on the trust and therefore an award of attorney's fees to [Mother] would be inequitable and inappropriate."

It is well established that a trustee may recover from the trust estate all of his or her proper expenses, including reasonable attorney's fees and fees incurred in preserving and protecting trust property. *Klinkerfuss v. Cronin*, 199 S.W.3d 831, 843-44 (Mo. App. E.D. 2006).

Section 456.10-1004 similarly states:

> In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy.

"Where the legislature statutorily authorizes an award of attorney's fees in the discretion of the trial court as in this case, the decision to grant or deny attorney's fees is reviewable for an abuse of discretion." *Peppers Cemetery Found. v. McKinney*, 455 S.W.3d 465, 469 (Mo. App. S.D. 2015) (quoting *O'Riley v. U.S. Bank, N.A.*, 412 S.W.3d 400, 418 (Mo. App. W.D. 2013)). When a reviewing court reverses and remands a case on the merits, "the reviewing court is . . . unable to discern whether the portion of the trial court's decision pertaining to attorney's fees constitutes an abuse of discretion. *Bryant v. Bryant*, 218 S.W.3d 565, 573 (Mo. App. E.D. 2007).

Here, the circuit court misinterpreted the language of the Trust Agreement when it concluded that Mother has the sole ability to appoint a new trustee. That prejudicial error requires us to reverse that portion of the judgment and remand the case with directions. And Mother concedes that no substantial evidence in the record supports the circuit court's findings charging Son with wrongdoing while serving as a trustee, requiring the removal of that language from the judgment.

Because these changes are significant, and Mother has not prevailed on any of the issues decided in this appeal, as in the *Bryant* case, we are unable to determine whether the circuit court's current award of attorney's fees -- presumably based (at least in part) upon the circuit court's erroneous findings -- constitutes an abuse of discretion. We therefore remand the matter to allow the circuit court to reconsider its fee awards in light of the changes to the judgment mandated in this opinion.

Intervenors' Point 3 is also granted.

17

## Conclusion

The portion of the judgment declaring that principal in Mother's trust may only be used to pay Mother's extraordinary medical expenses is affirmed. Because the Trust Agreement does not allow Mother, acting alone, to appoint an additional trustee, but rather requires any such appointment to be made by a majority of the adult eligible income beneficiaries, the "approval" of Mr. Dow as an additional trustee is reversed. The judgment is also reversed insofar as it purports to remove Son as a trustee. Finally, the circuit court's award of attorney's fees is reversed and remanded for reconsideration, and the circuit court is directed to enter an amended judgment consistent with this opinion.

DON E. BURRELL, J. – OPINION AUTHOR

MARY W. SHEFFIELD, P.J. – CONCURS

JENNIFER R. GROWCOCK, J. – CONCURS

18