**John P. GOULDING, Appellant,**

v.

**BANK OF AMERICA, N.A., John Michael Goulding, Patrick Goulding, Jr. and Kimberly Goulding McMahon, Respondents.**

**No. WD 71446.**

Missouri Court of Appeals,
Western District.

Nov. 30, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 1, 2011.

Application for Transfer Denied June 28, 2011.

See also 711 S.W.2d 872.

Sharon A. Coberly, Esq., Kansas City, MO, for appellant.

Allisaon M. Murdock, Esq., James Charles Wirken, Esq., Kansas City, MO, for respondent.

John M. Goulding, Austin, TX, pro se.

Before Division One: KAREN KING MITCHELL, Presiding Judge, LISA WHITE HARDWICK, Chief Judge and CYNTHIA MARTIN, Judge.

LISA WHITE HARDWICK, Chief Judge.

John P. Goulding, Jr. ("John Jr.") appeals the summary judgment ruling that, as a matter of law, Bank of America, N.A. as Trustee ("Trustee" or "Bank"), had correctly distributed Trust income from the Trust of his great aunt, Margaret P. Galbraith. For reasons explained herein, we affirm the summary judgment.

### FACTUAL AND PROCEDURAL HISTORY

Margaret P. Galbraith was the Settlor of a Trust Agreement dated July 8, 1946, as amended by modifications dated August 15, 1958 and September 26, 1961, the latter having no relevance to this appeal. The Bank has served as Trustee since the Trust's creation in 1946.

As modified in 1958, the Trust Agreement set forth a list of income beneficiaries, their relationship to Settlor and the

share of income each was to receive from the Trust:

To my mother, EMMA FLANAGAN, 17% of such net income.

To my sister, MARY GOULDING, 17% of such net income.

To my nephew, JOHN P. GOULDING [SR.], 17% of such net income.

To my cousin, MINNIE SCULLY, 17% of such net income.

To ISABEL GOULDING, wife of said John P. Goulding [Sr.], 8½% of such net income.

To PATRICK J. GOULDING and JOHN P. GOULDING [JR.] (children of John P. Goulding [Sr.] and Isabel Goulding) 3¼% each of said net income....

The Trust Agreement also contained a provision that directed 17% of the Trust's net income at her death "to the lawful issue of John P. Goulding [Sr.] who shall be living at the time of each monthly distribution." ("17% provision")

Upon the deaths of named beneficiaries, Settlor provided three specific directions for the postmortem distribution of their shares as follows:

[1] Upon the death of Emma Flanagan, the share of income theretofore payable to her shall accrue in equal parts to Mary Goulding, John P. Goulding [Sr.], and Minnie Scully, or to the survivors of them at the time of her death. [2] Upon the death of Mary Goulding, her former share of income shall accrue to John P. Goulding [Sr.]. or to his lawful surviving issue in the event of his prior death. [3] Upon the death of the other named income beneficiaries their respective former shares shall accrue *per stirpes* to the lawful issue of said John P. Goulding [Sr.].

The named beneficiaries died on the following dates:

Emma—September 9, 1960

Settlor—September 3, 1963

Minnie—January 1973

John Sr.—April 5, 1974

Patrick—September 21, 1982

Mary—April 19, 1984

Isabel—October 12, 1996

The distribution of income after Settlor's death occurred as follows. Emma predeceased Settlor. Under the terms of the Trust, her share of 17% accrued in equal parts to Mary, John Sr. and Minnie as specifically named beneficiaries. The Trust net income was distributed as follows:

Minnie—22.67%

John Sr.—22.67%

Mary—22.67%

Isabel—8.5%

Patrick—11.75% (which includes half of the 17% provision)

John Jr.—11.75% (which includes half of the 17% provision)

Minnie died in January 1973. Under the terms of the Trust, she was an "other named beneficiary" whose former share accrued not to specifically named beneficiaries, but instead *per stirpes* to the lawful issue of John Sr." John Jr. and Patrick were the "lawful issue" of John Sr. at the time of Minnie's death. Following Minnie's death, the Trustee began distributing her 22.67% share to Patrick and John Jr. as follows:

John Sr.—22.67%

Mary—22.67%

Isabel—8.5%

Patrick—23.085%

John Jr.—23.085%

John Sr. died on April 5, 1974. Under the terms of the Trust, he was an "other named beneficiary" whose former share accrued not to specifically named beneficiaries, but instead *per stirpes* to his lawful

issue. Patrick and John Jr. were the "lawful issue" of John Sr. at the time of John Sr.'s death. Thus, as with Minnie's share, the Trustee began distributing his 22.67% share to Patrick and John Jr. as follows:

Mary—22.66%

Isabel—8.5%

Patrick—34.42%

John Jr.—34.42%

To this point, distribution of the Trust income is not in dispute. However, following Patrick's death, John Jr. claims distributions were not made according to the plain language of the Trust. Patrick died on September 21, 1982. Under the terms of the Trust, Patrick was an "other named beneficiary" whose former share accrued *per stirpes* to the lawful issue of John Sr. The Trustee distributed Patrick's entire 34.42% share to his children, John Michael Goulding, Patrick Goulding, Jr., and Kimberly Goulding McMahon. ("Patrick's Children" or "Patrick's lawful issue"). Patrick's Children's status as the lawful issue of Patrick, and thus of John Sr. in Patrick's stead under the Trust, had previously been determined in *Traders Bank of Kansas City v. Goulding*, 711 S.W.2d 872, 874–75 (Mo. banc 1986) (only Patrick's legitimate children qualified as John Sr.'s issue under the Trust). As a result, the Trustee began distributing the Trust income following Patrick's death as follows:

Mary—22.66%

Isabel—8.5%

John Jr.—34.42%

Patrick's Children—34.42%

Mary died on April 19, 1984. Under the terms of the Trust, her former share of income "accrue[d] to John Sr., or his lawful surviving issue in the event of his prior death." The Trustee distributed the 22.66% share of income Mary was receiving, half to John Jr. and half to Patrick's Children.

Isabel died on October 12, 1996. As an "other named beneficiary" her former shares accrued *per stirpes* to John Sr.'s lawful issue. The Trustee distributed the 8.5% share of income Isabel was receiving, half to John Jr. and half to Patrick's Children.

In 2005, John Jr. filed a breach of trust action alleging that subsequent to Patrick's death, the Trustee had failed to distribute the Trust income in accordance with its express terms. Specifically, he claimed that as one of the lawful issue of his father John Sr. at the time of his brother Patrick's death, he was entitled to one-half of Patrick's former share [3.25%] by virtue of the Trust language, namely: "Upon the death of the other named beneficiaries their respective former shares shall accrue *per stirpes* to the lawful issue of said John [Sr.]."

John Jr. filed a summary judgment motion seeking a ruling that he should have received an additional 1.635% of the Trust's net income since Patrick's death in 1982. The Bank filed a cross-motion for summary judgment seeking a ruling that Patrick's 3.25% share was properly distributed to Patrick's Children based on the overall intent evident from the Trust Agreement to treat the issue of John Sr. equally. John Jr. withdrew his motion and sought leave to file an amended petition.

The Circuit Court determined that Patrick was an "other named beneficiary" as that term is used in the Trust and, as such, Patrick's 3.25% share—that is the share specifically assigned to him by the Trust Agreement—should have been distributed after his death *per stirpes* to the issue of John Sr. ("Circuit Court's 2007 Order"). In denying the Bank's motion, the Court stated:

To the extent that Bank has distributed the income shares of John [Sr.], Minnie

Scully, Isabel Goulding and Patrick Goulding, subsequent to their deaths, to other than the issue of settlor's nephew, John [Sr.], *per stirpes,* such distribution is not consistent with the dispositive provisions of the Trust instruments. Thus, the Court cannot find that Bank has properly performed its duty to distribute Trust income in accordance with the terms of the Trust instruments and summary judgment will not lie.

The practical effect of the Circuit Court's 2007 Order was to award John Jr. an additional 1.635% of the net income, representing his *per stirpital* portion of Patrick's 3.25% share, with the other 1.635% going to Patrick's Children.

On January 4, 2008, John Jr. filed his Third Amended Petition claiming that Patrick's "former share" as used in the Trust Agreement includes both the 3.25% share specifically provided for Patrick in the Agreement and the additional 31.17% of the Trust's net income being distributed to Patrick before his death as a lawful issue of John Sr. and as a result of the deaths of Minnie and John Sr. John Jr. asserted the Bank should have distributed, after Patrick's death, one half of all of Patrick's income from the Trust to him and one half to Patrick's Children. He moved for partial summary judgment.

The Bank also moved for partial summary judgment. The Bank acknowledged the Circuit Court's 2007 Order finding that it had incorrectly distributed 1.625% of the Trust's net income to Patrick's Children rather than to John Jr. The Bank took the position that the percentage portion of the Trust income allocated to each income beneficiary was fixed by the Trust indenture and that only the identity of the individual(s) entitled to such share changed with the passage of time. Application of the Bank's position required that, upon the death of a beneficiary, each portion of that deceased beneficiary's share derived from either Emma, Mary or a named beneficiary be separately reallocated to the *per stirpital* issue of John [Sr.] then living. The Bank sought a ruling that the remaining income Patrick was receiving at the time of his death was correctly distributed to Patrick's Children because they took Patrick's place as the issue of John Sr.

In December 2008, the Court entered judgment granting the Bank's motion. ("Circuit Court's 2008 Judgment") The Court held that Patrick's "former share," as referenced in the Trust Agreement, was only the 3.25% specifically provided in the Agreement. As a result, the Bank had properly distributed the income Patrick was receiving at his death by virtue of his status as a lawful issue of John Sr. to Patrick's Children.

John Jr. filed a Motion for Reconsideration, wherein he argued for the first time in his reply suggestions that he might also be entitled to receive all of the income from the 17% provision; and that he might be entitled to all of the income Mary was receiving at the time of her death in 1984. In essence, John Jr. argued he might be entitled to all of the Trust proceeds as the last surviving member of the "class of individuals" who made up the *per stirpital* issue of John Sr. The Court denied the motion for reconsideration ("Circuit Court's July 2009 Judgment") and entered a Judgment certifying the Circuit Court's 2008 Judgment and the Circuit Court's July 2009 Judgment as final for purposes of appeal pursuant to Rule 74.04(b).[1] John Jr. appeals.

---

1. All rule citations are to Missouri Rules of Civil Procedure (2010) unless otherwise noted.

## STANDARD OF REVIEW

This appeal involves the Circuit Court's interpretation of trust language controlling the distribution of income from the Trust subsequent to the death of Patrick Goulding in 1982. The parties agree upon the relevant facts of the case, but there is disagreement over the interpretation of the language in the Trust Agreement. Our review, therefore, is of the interpretation of the language of the Trust based on the Settlor's intent. Grants of summary judgment and questions of trust interpretation are reviewed by this court *de novo*, with no deference given to the judgment of the court below. *Blue Ridge Bank and Trust Co. v. McFall*, 207 S.W.3d 149, 156 (Mo.App.2006).

## ANALYSIS

In Point I, John Jr. contends the Circuit Court erred in granting the Bank's motion for partial summary judgment and in denying his competing motion for partial summary judgment. He argues the court failed to adhere to the Settlor's intent that the 34.42% share of Trust income Patrick was receiving prior to his death be distributed after his death *per stirpes* to the lawful issue of John Sr., thereby entitling John Jr. to 17.21% of Patrick's share of the Trust income, with the balance, 17.21%, payable to Patrick's lawful issue.[2] Pursuant to this argument, immediately following Patrick's death, John Jr. was entitled to receive a total of 51.63% of the Trust income (the 34.42% he was receiving before Patrick's death plus 17.21% of Pat-

rick's income share), while Patrick's issue were only entitled to receive 17.21% of the Trust income.[3]

The 34.42% share of Trust income Patrick was receiving at the time of his death was composed of the 3.25% share of income specifically assigned to him as a named beneficiary in the Trust Agreement, and a 31.17% share of income he was receiving from the 17% provision (8.5%) and from the former shares of John Sr. and Minnie following their deaths (11.33% each for a total of 22.66%). The Circuit Court's 2007 Order concluded that the 3.25% share of income Patrick was receiving as a specifically named beneficiary should have accrued on Patrick's death 50% to John Jr. and 50% to Patrick's issue, as Patrick was an "other named beneficiary" whose "former share" of income was to accrue to the lawful issue of John Sr. *per stirpes*. This determination is not contested by either party on appeal. Thus, all that is at issue on this appeal is the manner in which the 31.17% balance of Patrick's income share is to be distributed.

In the competing motions for partial summary judgment, John Jr. claimed that Patrick's 31.17% income share "vested" in Patrick, and became a part of Patrick's "former share," such that on Patrick's death, the amount was to be distributed *per stirpes* in the same fashion as Patrick's 3.25% share—50% to John Jr. and 50% to Patrick's lawful issue. The Bank argued that Patrick's 31.17% income interest was intended by the Trust terms to accrue

---

2. Point I focuses on the timeframe immediately following Patrick's death, and before Mary and Isabel died. Though Mary and Isabel had long since passed away by the time John Jr. filed his Third Amended Petition, no complaint with respect to the Bank's distributions of their respective "former shares" was raised by John Jr. Thus, the sole and only subject of the competing motions for partial

summary judgment giving rise to the Circuit Court's 2008 Judgment was the distribution of Patrick's share of Trust income immediately following his death.

3. At the time of Patrick's death, Mary was receiving 22.66% of the Trust income and Isabel was receiving 8.5% of the Trust income.

100% to Patrick's lawful issue. The Circuit Court agreed with the Bank, and ruled that although Patrick's 3.25% income interest was his "former share" (and thus accrued 50% to John Jr. and 50% to Patrick's lawful issue), Patrick's 31.17% share of Trust income did not add to Patrick's "former share," but was intended to accrue 100% to Patrick's lawful issue on his death.

John Jr. argues on appeal that the Circuit Court's Judgment is in error because: (1) when the 31.17% of income in contest "accrued" to Patrick per the Trust terms, it "vested" in Patrick, thus becoming a part of Patrick's former share; and (2) as Patrick's "former share" included the contested 31.17% of trust income, it should have been distributed *per stirpes,* with 50% to John Jr. and 50% to Patrick's lawful issue. John Jr. thus asserts the Circuit Court failed to give the Settlor's words, "accrue," "former share" and "respective former share" their plain and ordinary meaning. We disagree.

 The parties agree that the Settlor's intent is controlling, *McFall,* 207 S.W.3d at 156. Such intent must be determined from the Trust Agreement as a whole, giving the words used their usual, ordinary and natural meaning unless the Agreement indicates another meaning should be given. *Trustees of Green Trails Estates Subdivision v. Marble,* 80 S.W.3d 841, 846 (Mo.App.2002). The court is to ascertain the meaning of language used in light of the facts known and considered by the Settlor. *Gardner,* 69 S.W.2d at 950. Further, the Settlor's dispositive plan must be considered as bearing on intent and, in the case of doubt, the instrument should be considered in favor of the Settlor's general primary intention. *Mercantile Trust Co. v. Sowell,* 359 S.W.2d 719, 723 (Mo. banc 1962).

 John Jr.'s argument that additional income beyond the 3.25% "former share"

he and Patrick received as specifically named beneficiaries "vested," and thus increased their "former shares," necessarily assumes that the additional income accrued *specifically* to John Jr. and Patrick. This assumption is erroneous. The Trust clearly provides that on the death of an "other named beneficiary," that beneficiary's "former share" is to accrue to John Sr., if he is living, and if not, *"per stirpes* to the lawful issue of [John Sr.]." John Jr.'s argument would require us to substitute the phrase "John, Jr. and Patrick" for the phrase "lawful issue of John Sr." That we cannot do, as it is does not reflect the Settlor's intent. *Commerce Bank, N.A. v. Blasdel,* 141 S.W.3d 434, 444 (Mo.App. 2004) ("The courts have no right to make a new will for the testator, nor have they the right to say what the testator should have meant to do, nor what words the testator meant to use, but the true province of the court is to ascertain from the will what the testator meant by the words he actually used.") John Jr. cannot effectively argue, therefore, that distributions to "the lawful issue of John Sr." were specific distributions to John Jr. and Patrick merely because they were, at the time of a beneficiary's deaths, the lawful issue of John Sr. Accordingly, we reject John Jr.'s assertion that the "former shares" of John Sr. and Minnie accrued directly to John Jr. and Patrick so as to increase their respective 3.25% "former shares."

Instead, we conclude that each time the Trust Agreement directs accrual of the former shares of a beneficiary to the "lawful issue of John Sr.," it directs the accrual of that distribution to the 17% provision whose identified recipients are the "lawful issue of John Sr." As such, and by way of example, when John Sr. and Minnie died, their "former shares" accrued to the 17% provision, increasing the amount of Trust

income distributable pursuant to that provision.

An indication of Settlor's intent in this regard is demonstrated by her different treatment of Emma's "former share." Per the express terms of the Trust, Emma's former share accrued to *specifically* named beneficiaries—John Sr., Minnie and Mary—in equal shares. This distribution to specifically named beneficiaries correspondingly increased the "former share" of each from 17% to 22.67%.[4] Because Emma's former share increased the former shares of John Sr., Minnie and Mary, Emma's former share became subject to subsequent distribution as part of the former shares of these "other named beneficiaries."[5] Similarly, even with respect to the deaths of "other named beneficiaries," Settlor first stated that the beneficiary's share would accrue *specifically* to John Sr., if he was living. Had that circumstance occurred, John Sr.'s former share would have correspondingly increased, as he was a specifically designated beneficiary entitled to accrual of another beneficiary's former share. In stark contrast, should John Sr. not survive the death of an "other named beneficiary," the Settlor directed distribution of the beneficiary's former share to John Sr.'s "lawful issue." This is not a distribution to a specifically named beneficiary, and thus cannot be treated as increasing a specifically named beneficiary's "former share." Had the

Settlor intended the alternative distribution in the event of John Sr.'s prior death to accrue specifically to John Jr. and Patrick, as John Jr. argues, then she could and would have said so. She did not.

It is evident, therefore, that Settlor's ultimate intent was to eventually accrue the former shares of *all* of the specifically named beneficiaries of the Trust to the 17% provision, as each named beneficiary's former share is distributable such that at some point it accrues to John Sr.'s "lawful issue."[6] It is equally evident that the Settlor thus carefully crafted the Trust to effect an intent to equivalently distribute Trust income to John Sr.'s "lawful issue."

We conclude that the phrases "former share" and "respective former share" as used in the Trust Agreement refer to the amount a specifically named beneficiary received pursuant to the initial terms of the Trust as increased by any other amount *specifically* directed to accrue to that named beneficiary upon the death of another beneficiary. "Former share" does not include the amounts a specifically named beneficiary happened to be receiving from the 17% provision as a fortuity of being an eligible recipient. We also conclude that the amount of Trust income subject to distribution pursuant to the 17% provision was intended by the Settlor to be increased by all former shares directed by the Trust to accrue to the lawful issue of John Sr. on the death of a beneficiary.

---

**4.** One of the three specifically named beneficiaries would necessarily have received 22.66%, though that differential is immaterial to our discussion.

**5.** We thus reject John Jr.'s concern that the Circuit Court's 2008 Judgment left Emma's former share dangling, with no directive for its subsequent distribution on the deaths of those specifically named as the recipients of her former share.

**6.** This is true not only with the former shares of John Sr. and Minnie, but also with the

former share of Isabel, an "other named beneficiary" like John Sr. and Minnie, and with Mary, whose former share is to accrue to John Sr. if living, or to "his lawful surviving issue in the event of his prior death." Though the modifier "surviving" is included in Mary's distribution directive, it is a term of no added legal import here as the 17% provision is already subject to the limitation that it be distributed, monthly, to the lawful issue of John Sr. living at the time of the distribution.

We therefore reject John Jr.'s argument that Patrick's former share included the 31.17% income share Patrick was receiving from the 17% provision. Patrick's "former share" was limited to 3.25%, and per the clear terms of the Trust, was never subject to increase. As Patrick was an "other named beneficiary," his "former share" of 3.25% accrued *per stirpes* to the lawful issue of John Sr., and thus to the 17% provision, subject to distribution as therein described to the lawful issue of John Sr. living at the time of each monthly distribution. Since Patrick's lawful issue became John Sr.'s lawful issue on Patrick's death (a matter not contested by John Jr.), the Circuit Court correctly concluded that 50% of Patrick's 3.25% former share became payable to John Jr. and 50% of Patrick's 3.25% former share became payable to Patrick's lawful issue. These payments, however, are not direct distributions of Patrick's former share, but are instead amounts the recipients are entitled to receive through the 17% provision. Similarly, since the 31.17% that Patrick was receiving was *not* a part of Patrick's former share, but was instead being paid to Patrick as a "lawful issue" of John Sr. through the 17% provision, the 31.17% income share became payable to Patrick's lawful issue, in Patrick's stead, on Patrick's death.

We are cognizant that Trust income captured within the 17% provision is, by the terms of that provision, payable to the "lawful issue of [John Sr.] who shall be living at the time of each monthly distribution," without reference to a *per stirpital* requirement. We are also cognizant that the "former shares" of some beneficiaries, namely "other named beneficiaries," accrue into the 17% provision in an express *per stirpital* fashion. However, the *per stirpital* reference, though a strong indica-

tor of the Settlor's intent to treat John Sr.'s lawful issue equivalently, has no practical impact on the manner in which income otherwise captured within the 17% provision is required to be distributed, given the identical effect of a distribution to "lawful issue then living" and a distribution *per stirpes.*

"*Per stirpes*" refers to a method of dividing an estate "where a class or group of distributees take the share which their deceased would have been entitled to, had he or she lived, thus taking by their right of representing such ancestor, and not as so many individuals." BLACK'S LAW DICTIONARY, Sixth Ed. p. 1144. Using the definition of *per stirpes,* on the death of Patrick, Patrick's lawful issue became John Sr.'s lawful issue in Patrick's stead, and thus entitled to any amount Patrick was receiving *per stirpes.*

An identical outcome is achieved with the distribution language in the 17% provision which requires income to be paid in equal shares to the lawful issue of John Sr. *who shall be living at the time of each monthly distribution.* Settlor's insistence on a "rolling" determination of those eligible to receive payment under the 17% provision is clearly inconsistent with any argument that the eligible class of recipients under the 17% provision "closed" or was permanently fixed at any time prior to the Trust's termination. Instead, the Trustee is required to determine the identity of the lawful issue living at the time of each monthly distribution of income under the 17% provision. To do so in accordance with the Settlor's intent, the Trustee must afford the term "lawful issue" its plain and ordinary meaning. In this case, that is a meaning long understood, and now codified by statute. "Issue" is defined by section 472.010(16) [7] as "all lawful lineal descen-

7. All statutory references are to Revised Stat- utes of Missouri (2000) as updated by the

dants, except those who are the lineal descendants of living lineal descendents[.]" Per this definition, the lawful lineal descendants of John Sr. were John Jr. and Patrick *while both were living*. When Patrick died, however, his lawful issue substituted for him as a "lawful lineal descendant" of John Sr. Thus, when Patrick died, the "lawful issue" of John Sr. became John Jr. and Patrick's lawful issue in Patrick's stead.

Accrual of a *per stirpital* distribution into the 17% provision for subsequent distribution effects, therefore, no different result than that achieved by simply applying the 17% provision's distribution language, which lacks an express *per stirpital* directive. Thus, the Circuit Court correctly concluded, albeit having taken a slightly different path,[8] that Patrick's 31.17% share of income, which included *per stirpital* income shares from John Sr. and Minnie and Patrick's share from the amount originally allocated by the Trust to the 17% provision, became payable to his lawful issue on his death. At that moment, Patrick's lawful issue became the lawful issue of John Sr., and thus lawful issue of John Sr. living at the time of a monthly distribution from the 17% provision.

We also correspondingly reject John Jr.'s corollary argument that when the Trust directed that the "former shares" of "other named beneficiaries" shall "accrue to the lawful issue of John Sr.," this meant that those shares vested in the then living lawful issue of John Sr. (John Jr. and Patrick) and thus became a part of their "former shares." We have already concluded that the "former shares" of John

Sr. and Minnie as "other named beneficiaries" never accrued directly to John Jr. or Patrick, but instead accrued to the 17% provision. Thus, even if John Jr.'s argument that "accrue" means "vest" is correct, the argument would not result in an increase of John Jr.'s and Patrick's "former shares."

Moreover, there are multiple definitions of the word "accrue" depending upon the context in which it is used. *State ex rel. Clark v. Gallagher*, 801 S.W.2d 341, 343 (Mo.1990). The Circuit Court properly looked to other portions of the Trust Agreement in an attempt to determine the Settlor's intent in using the term "accrue." In the 17% provision, the first sentence of the final paragraph refers to the "accrual" of income within the parameters of that provision during the administration of the Trust:

> The trustee may, in its discretion retain and withhold for investment and reinvestment, any income accruing from time to time to or for the lawful issue of said John [Sr.] if and when, in the exercise of its sound discretion, it shall deem that the income accruing shall not be reasonably required for their reasonable and immediate needs from time to time.

The use of "accrue" in this context is clearly inconsistent with the concept of "vest." The Circuit Court concluded that although the use of the word "accrue" could, in isolation, be viewed as consistent with the definition "to come by way of increase or addition" as favored by John Jr., in reading the Trust Agreement as a whole, "accrue" was intended to mean "to accumulate or be added periodically." We agree.

Cumulative Supplement (2009).

**8.** The Circuit Court treated the former shares of "other named beneficiaries" as depositing into a segregated category of "derived" shares benefitting the lawful issue of John Sr. We do not believe that to be the case, and instead believe that when the Trust directed the former share of a beneficiary to accrue to John Sr.'s lawful issue, the Trust was directing the accrual of the former share to the 17% provision.

Nothing about the Settlor's use of the term "accrue" signaled the intent to permanently fix the right to receive an income share. This is particularly apparent given Settlor's use of the word "vest" in referring to those in whom shares of the corpus and any undistributed income in the Trust would "vest" upon the termination of the Trust, suggesting that the Settlor understood and intended the terms "accrue" and "vest" to have different meanings and effects.

In summary, we find no error in the Bank's distribution of assets through the time of Patrick's death. We conclude the Settlor clearly intended to provide for the eventual distribution of equal shares of all of the Trust income (and ultimately the trust corpus) to John Sr.'s lawful issue, including the lawful issue of John Sr.'s lawful issue.[9] Point I is denied.[10]

In Point II, John Jr. argues that "class closures" and resulting "vested remainders" block distribution of much of the Trust's income to Patrick's lawful issue, and that all of Mary's former share of 22.66% should have accrued to him. John Jr. asserts he is entitled to the 34.42% share of Trust income he was receiving before Patrick died, plus the following: (i) Patrick's 8.5% share of the income from the 17% provision;[11] (ii) 12.96% of the Trust income representing one half of the 25.92% share of Trust income Patrick was receiving from sources other than from the 17% provision (Patrick's 3.25% share, the 11.33% *per stirpital* distribution following the death of John Sr., and the 11.33% *per stirpital* distribution following the death of Minnie); (iii) 22.66% of the Trust income which had been Mary's share; and (iv) 4.25 % of the Trust income representing one-half of Isabel's former share. John

9. Other language in the Trust Agreement solidifies our conclusion with respect to the Settlor's intent. The specific beneficiary designation for John Jr. and Patrick of 3.25% each is followed by the following language: "which payments shall be subject in all respects to the provisions for payments to the lawful issue of [John Sr.]." This passage evidences the Settlor's clear intent that the "former shares" expressly awarded John Jr. and Patrick pass in the same manner as other sums each is eligible to receive under the 17% provision. Thus, Patrick's and John Jr.'s former shares were intended at all times to accrue on their deaths to the lawful issue of John Sr., and thus, as herein discussed, in a *per stirpital* fashion to each of their respective lawful issue. Whether this should have occurred by treating each party's 3.25% income share as accruing directly to that party's lawful issue on his death, (as the Bank did with Patrick's 3.25% share before the Circuit Court's 2007 Order), or as accruing into the 17% provision for distribution equally to John Jr. and Patrick, and on their respective deaths, to their respective lawful issue, (the practical effect of the Circuit Court's 2007 Order), the net effect is the same—an equivalent distribution of Trust income to John Sr.'s lawful issue, *per stirpes.*

10. In the argument portion of his brief under Point I, John Jr. argues that when Patrick died, John Jr. was left as the only "lawful issue" of John Sr., and thus as the only eligible recipient under the 17% provision. He also argues that when Mary died (an event which occurred after Patrick's death), he became entitled to receive the entirety of her 22.66% former share. Neither of these arguments is included within John Jr.'s first Point Relied On and thus, neither has been preserved for appellate review pursuant to Rules 84.04(e); 84.13(a). These same arguments are repeated in John Jr.'s second Point Relied On. Given the definition of "lawful issue," the Settlor's intent to provide for equivalent distributions to the lawful issue of John Sr., and our conclusion that all former shares directed to accrue to the lawful issue of John Sr. are meant to accrue to the 17% provision, neither of John Jr.'s arguments is meritorious.

11. In Point I, John Jr. inconsistently argued that Patrick's 8.5% share of the income from the 17% provision should be payable to Patrick's lawful issue.

Jr.'s arguments would result in him receiving 82.79% of the Trust income, while Patrick's lawful issue would receive only 17.21% of the Trust income,[12] (4.25% from Isabel's share and 12.96% from the half of Patrick's share other than his 8.5% share of the 17% provision).

These arguments were not raised in John Jr.'s Third Amended Petition, were not raised in John Jr.'s motion for partial summary judgment, were not raised in John Jr.'s response to the Bank's motion for summary judgment and, thus, were not the subject of the Circuit Court's 2008 Judgment from which this appeal has been taken.

These arguments were raised by John Jr. for the first time in his reply suggestions in support of his motion for reconsideration. Though the Circuit Court discussed its disagreement with, and thus rejection of, the substance of John Jr.'s "new" arguments in the Circuit Court's July 2009 Judgment denying John Jr.'s motion for reconsideration, that discussion did not modify the Circuit Court's 2008 Judgment. Nor could it have, as the new issues asserted by John Jr. were not addressed in the competing motions for partial summary judgment ruled by the Circuit Court's 2008 Judgment. Because the new issues raised by John Jr. in Point II were neither properly presented nor fully briefed for the Circuit Court's consideration, we question whether they have been preserved for appeal.

We are aware, however, that the Circuit Court certified the Circuit Court's July 2009 Judgment for interlocutory appeal. In examining that 2009 Judgment, we be-lieve the Circuit Court limited its consideration to the issue before it in the Court's 2008 Judgment. While we question the eligibility of the 2009 Judgment for analysis on appeal pursuant to Rule 74.01, we treat it as a clarification of the 2008 Judgment.

■ Assuming that certification of the Circuit Court's July 2009 Order properly affords us the authority to address these issues, we observe that John Jr.'s argument regarding vested remainders and class gifts is largely irrelevant. General rules relating to the vesting of class gifts and the determination of the members of the class at the time of the Testator's death apply only "absent clear words to the contrary" in the will or trust. *Gardner*, 69 S.W.2d at 950. As previously noted, the words of the Trust Agreement demonstrate the Settlor's clear intention that the "class" of individuals comprising the lawful issue of John Sr. remain open until the termination of the Trust, and in fact, subject to determination each month in connection with the payment of income pursuant to the 17% provision. The Trust clearly and unambiguously identifies the beneficiaries of the Trust, which necessarily include Patrick's lawful issue as the lawful issue of John Sr. As the Circuit Court noted:

> Closure of the class comprising the heirs of John[Sr.] at a time prior to the death of one of his two sons would have the effect of cutting off the descendants of the first son to die, in favor of the surviving son. The settlor's use of the term *per stirpes* when referring to John

---

12. This is the same percentage of Trust income that John Jr.'s argument under Point I would have Patrick's lawful issue receiving. However, the calculation in Point I did not consider any income Patrick's lawful issue would have been entitled to receive from Isabel's former shares, and thus did not include the portion of Isabel's share John Jr. would award them under Point II. Thus, though the percentage John Jr. believes Patrick's lawful issue should receive is the same under both points, it is calculated differently in each point, as noted in footnote 10, rendering John Jr.'s positions inconsistent.

[Sr.'s] issue strongly suggests that she did not intend to prefer his sons over their descendants. Such language is inconsistent with an intent to close the class of individuals making up the issue of John [Sr.] in any manner which results in cutting out the descendants of either of John [Sr.'s] sons.

We also observe that distribution of Mary's former share, directed to accrue to John Sr., or to "his lawful surviving issue" in the event of his prior death, would have accrued to the 17% provision, the same as all other former shares accruing to John Sr.'s lawful issue. This is true notwithstanding the Settlor's use of the term "surviving." The 17% provision already incorporates the essential requirement of "survival" as a condition of distribution of monthly income, rendering the term "surviving" as used in discussing distribution of Mary's former share repetitive of the effect already accomplished by the 17% provision. Moreover, given the definition of "lawful issue," there is no dispute that on Mary's death, and given Patrick's prior death, Patrick's lawful issue became the lawful issue of John, Sr. in Patrick's stead, entitled to receive one half of Mary's former share.

Point II is denied.

### CONCLUSION

We affirm the Circuit Court's 2008 Judgment granting the Bank's partial motion for summary judgment and denying John Jr.s' competing motion for summary judgment, and the Circuit Court's July 2009 Order denying John Jr.'s motion for reconsideration.

All Concur.