**In the Matter of GENE WILD INSURANCE TRUST.**

**U.S. BANK, N.A., Petitioner–Respondent,**

v.

**James H. WILD, Individually, and as Trustee of the Gene Wild Revocable Trust, Cottey College, and College of the Ozarks, Respondents–Appellants,**

**Katherine Alice Cunningham, and Laura Nance Cunningham, Respondents–Respondents.**

**Nos. SD 30449, SD 30457, SD 30459.**

Missouri Court of Appeals, Southern District, Division One.

Feb. 22, 2011.

Motion for Rehearing and Transfer Denied March 14, 2011.

Application for Transfer Denied April 26, 2011.

---

Kevin Checkett, Checkett & Pauly, P.C., Carthage, MO, for Appellant James H. Wild.

Virginia Lynne Fry and Jason C. Smith, Husch Blackwell LLP, Springfield, MO, for Appellant College of the Ozarks.

Todd W. Ruskamp and Clayton T. Norkey, Shook, Hardy & Bacon, L.L.P., Kansas City, MO, for Appellant Cottey College.

Jeremy K. Brown, Copeland & Brown, Joplin, MO, for Respondents Cunningham.

Jeffrey Wayne Heil, Spencer, Scott & Dwyer, Joplin, MO, for Respondent U.S. Bank, N.A.

GARY W. LYNCH, Judge.

James H. Wild, Trustee of the Gene Wild Revocable Trust; The School of the Ozarks, Inc., d/b/a College of the Ozarks; and Cottey College (collectively "Appellants"), appeal the trial court's judgment on the pleadings in favor of Katherine Cunningham and Laura Cunningham (collectively "the Cunninghams"), in a case brought by U.S. Bank, Trustee of the Gene Wild Insurance Trust, seeking a determination as to the manner in which it is to distribute the corpus of the Insurance Trust.[1] Finding that the trial court's judgment does not comport with the grantor's stated intent for the Insurance Trust, we reverse and remand for further proceedings.

### Factual and Procedural Background

Rule 55.27 authorizes a trial court to enter a judgment based solely on the pleadings. Rule 55.27(b).[2] " 'The party moving for judgment on the pleadings admits, for purposes of the motion, the truth of all well[-]pleaded facts in the opposing party's pleadings' " *State ex rel. Nixon v. Am. Tobacco Co., Inc.*, 34 S.W.3d 122, 134 (Mo.2000) (quoting *Barker v. Danner*, 903 S.W.2d 950, 957 (Mo.App.1995)). In that context, the pleadings, as stipulated by the parties, reveal the following.

On July 10, 1990, Shirley Gene Wild ("Decedent") executed a number of estate-planning documents, including the Gene Wild Revocable Trust agreement, which created the Gene Wild Revocable Trust ("Revocable Trust"), and the Gene Wild Insurance Trust agreement, which created the Gene Wild Insurance Trust ("Insurance Trust") that is the subject of this litigation.

The Revocable Trust named Decedent's brother, James H. Wild, as Trustee. As thereafter amended,[3] the Revocable Trust directs Trustee Wild to make certain specific distributions and then distribute the residue equally to two charitable remainder annuity trusts ("CRATs"). James H. Wild, individually, is the lifetime beneficiary of each CRAT, and College of the Ozarks is the remainder beneficiary of one, and Cottey College is the remainder beneficiary of the other.

---

1. The Court previously ordered Appellants' three separate appeals consolidated for all purposes.

2. All references to rules are to Missouri Court Rules (2010).

3. Decedent executed six amendments to the Revocable Trust that were the subject of two prior appeals, both of which were resolved in *In re Gene Wild Revocable Trust*, 299 S.W.3d 767 (Mo.App.2009). No party asserts that any of these amendments have any impact upon the resolution of the issues in this appeal.

The Revocable Trust gave Trustee Wild the discretionary authority to pay any applicable estate and inheritance taxes associated with Decedent's death, with such payment to be charged to the residue before funding the CRATs. It further specified that if such tax payment was undertaken, it was "without reimbursement from Grantor's Personal Representative, from any beneficiary of insurance from Grantor's life or any other person."

The Insurance Trust was irrevocable in that Decedent retained "no right, power or privilege to alter or amend" it after its execution. Paragraph A of Article VII of the Insurance Trust provides:

A. *Outright Gifts.* The Trustee shall distribute, outright and free of trust, to each person who is determined under Missouri law to be ultimately responsible for any federal estate tax, state estate or inheritance tax or any other death tax as a result of Grantor's death (hereinafter "death tax or taxes"),[4] an amount equal to such death taxes for which such person is determined by the Trustee to be responsible under Missouri law, it being Grantor's intent that such person(s) who receive a gift, devise or bequest as a result of Grantor's death (or receives property which is otherwise subject to death taxes at Grantor's death) in effect receives such gift, devise, bequest or other property without being burdened with such death taxes.

Paragraph B of Article VII provides that any funds remaining in the Insurance Trust "[a]fter funding the gift(s) in Paragraph A above," are to be held first in trust to benefit James H. Wild individually and then, upon his death, distributed to the then-living descendents of Virginia Sue Nance Cunningham.

Decedent passed away June 19, 2005. On March 10, 2006, James H. Wild, in his individual capacity, disclaimed any personal interest in any distributions from the Insurance Trust. The Cunninghams are the living descendents of Virginia Sue Nance Cunningham. Trustee Wild paid Decedent's death taxes.

U.S. Bank, as second successor trustee of the Insurance Trust, initiated the present action on July 19, 2006, seeking guidance as to the administration of the Insurance Trust, specifically "whether, and to what extent, James H. Wild, the Gene Wild Revocable Trust, or any of its beneficiaries are entitled to distributions under Article VII A of the [Insurance Trust] with respect to federal and state estate taxes[.]" The Cunninghams and both colleges subsequently filed cross-motions for judgment on the pleadings. The trial court granted the Cunninghams' motion, denied the colleges' motions, and entered a declaratory judgment finding that only the Cunninghams were entitled to any distribution from the Insurance Trust. This appeal timely followed.

### *Standard of Review*

The grant of a motion for judgment on the pleadings is proper only if, from the face of the pleadings, the moving party is entitled to judgment as a matter of law. *State ex rel. Nixon*, 34 S.W.3d at 134. Overall, we review a grant of judgment on the pleadings *de novo*, without deference to the trial court's ruling. *Cures Without Cloning v. Pund*, 259 S.W.3d 76, 80 (Mo.App.2008). A motion for judgment on the pleadings should be sustained "only where under the conceded facts, a judg-

---

4. In keeping with Decedent's designation, we will likewise refer in this opinion to any such tax or taxes as "death tax or taxes."

ment different from that pronounced could not be rendered notwithstanding any evidence which might be produced." *McIntosh v. Foulke*, 360 Mo. 481, 228 S.W.2d 757, 761 (1950).

### Discussion

Appellants present two points for our review. The second one is dispositive of this appeal.

■ In their second point, Appellants contend that the trial court misapplied the law in granting the Cunninghams' motion for judgment on the pleadings because it was Decedent's intent that those receiving gifts under the Revocable Trust do so without being burdened by death taxes. We agree.

Before beginning our analysis, however, we observe that we are in much the same position as Decedent was on the date she initially executed her estate plan, i.e., neither the amount of her death taxes nor the amount available for distribution from the Insurance Trust are known. Unlike Decedent's position when she initially executed her estate plan, however, the mere existence of this lawsuit supports that the latter amount is greater than zero. It is from this perspective that we proceed to consider Decedent's intent.

■ In general, Missouri courts use the same rules when construing both wills and trusts. *Commerce Bank, N.A. v. Blasdel*, 141 S.W.3d 434, 443 n. 9 (Mo.App. 2004). Ultimately, the paramount rule in construing a trust is that the intent of the grantor is supreme. *First Natl. Bank of Kansas City v. Hyde*, 363 S.W.2d 647, 652 (Mo.1962). This intent must be gleaned, if possible, from the trust instrument as a whole. *In re Gene Wild Revocable Trust*, 299 S.W.3d 767, 774 (Mo.App.2009). In examining the entirety of the trust agree-

ment at issue, no single word or clause is given undue preference. *Commerce Bank, N.A.*, 141 S.W.3d at 443. Rather, we must give meaning to the trust in its entirety and adopt a construction of its terms that reconciles, rather than creates, inconsistencies. *A.G. Edwards Trust Co. v. Miller*, 59 S.W.3d 550, 552 (Mo.App.2001). Furthermore, "where the language is clear and of well-defined force and meaning, it must stand as written, ... and a testator is presumed to know and intend the legal effect of the language he [or she] uses." *Blue Ridge Bank and Trust Co. v. McFall*, 207 S.W.3d 149, 157 (Mo.App.2006) (internal citations omitted). "Unless the context of a will or trust indicates a different meaning of a word, the word will be interpreted according to its plain, ordinary meaning." *Id.* Finally, if the language of the trust is clear, there is no need to engage the rules of construction, as we cannot rewrite the terms of the trust using such rules. *Boone Cnty. Nat'l Bank v. Edson*, 760 S.W.2d 108, 111 (Mo. banc 1988).

Here, paragraph A of Article VII of the Insurance Trust explicitly states Decedent's intent: "that such person(s) who receive a gift, devise or bequest as a result of Grantor's death (or receives property which is otherwise subject to death taxes at Grantor's death) in effect receives such gift, devise, bequest or other property without being burdened with such death taxes." This statement as to Decedent's intent in establishing and funding the Insurance Trust is, to this Court, clear and unambiguous; thus, we must effectuate Decedent's intent according to its plain, ordinary meaning. To do this, we must examine the words of the Insurance Trust in light of Decedent's entire estate plan and, particularly, her Revocable Trust.[5]

---

5. Appellants argue that the Insurance Trust

stands alone because it was no longer consid-

To effectuate her Insurance Trust intent, Decedent provided in the immediately preceding phrase what she described as an "Outright Gift" to

> each person who is determined under Missouri law to be ultimately responsible for any federal estate tax, state estate or inheritance tax or any other death tax as a result of [Decedent's] death (hereinafter "death tax or taxes"), an amount equal to such death taxes for which such person is determined by the Trustee to be responsible under Missouri law[.]

The parties here stipulate that Trustee Wild qualifies as a person determined under Missouri law to be ultimately responsible for Decedent's death taxes. The Cunninghams contend, nevertheless, that any "outright gift" from the Insurance Trust to Trustee Wild lapsed because such a gift would frustrate Decedent's intent, as expressed in the Revocable Trust, that Trustee Wild not seek reimbursement for the payment of death taxes and that any such taxes paid by him be charged against the residue of that trust.

Article XI of the Revocable Trust, in relevant part, provides that if the trustee of the Revocable Trust should deem it legally advantageous to pay Decedent's death taxes—rather than distributing the corpus subject to the payment of death taxes by the beneficiaries—the trustee is to make such payment out of the residue of the estate, and is to so act "without reimbursement from Grantor's Personal Representative, from any beneficiary of insurance from Grantor's life or any other person." First, the Cunninghams argue that "the Trustee of the Revocable Trust (as the representative of the residue) was specifically excluded from receiving a distribution under the Insurance Trust because such distribution by its very nature and design was nothing more than a reimbursement (which the Revocable Trust specifically precluded [Trustee] Wild from accepting)." Second, the Cunninghams argue that Decedent's "intent has always been to allocate the burden and ultimate responsibility of [death taxes] upon the Revocable Trust residue, without the right to seek reimbursement, including specifically prohibiting reimbursement from the Insurance Trust." Neither argument has any substance and, if accepted, would frustrate Decedent's stated intent for the Insurance Trust.

In support of their first argument, the Cunninghams equate "reimbursement" as used by Decedent in the Revocable Trust with "gift" as used by Decedent in the Insurance Trust. This alleged equality is premised upon the language in the Insurance Trust that the gift is in the "amount of the death taxes" paid by the beneficiary. Thus, the Cunninghams contend that the "gift" is nothing other than a "reimbursement" for the death-tax payment, which Trustee Wild is expressly prohibited from requiring under the terms of the Revocable Trust. Therefore, they argue, the "gift" lapsed because Trustee Wild could not require such "reimbursement." The mistake in the Cunninghams' argument, however, is that it fails to give both words their plain and ordinary meaning, as we are required to do. *See Blue Ridge Bank and Trust Co.*, 207 S.W.3d at 157.

"Reimbursement" means "repayment" or "indemnification," BLACK's LAW DICTIO-

---

ered part of Decedent's assets; however, it was undeniably part of Decedent's estate plan and, as such, the estate plan must be examined in its entirety. *See Schupbach v. Schupbach*, 760 S.W.2d 918, 924 (Mo.App.1988) (citing *Commerce Trust Co. v. Starling*, 393

S.W.2d 489, 494 (Mo.1965)). Furthermore, the terms of the relevant portion of the Insurance Trust necessarily require an examination of the Revocable Trust, and Appellants admit as much in their Reply Brief.

NARY 1312 (8th ed.2004), while "a gift made outright indicates [a] general intent" to simply transfer one's property to another without compensation. *Obermeyer v. Bank of Am., N.A.,* 140 S.W.3d 18, 25 (Mo. banc 2004); BLACK'S LAW DICTIONARY 709 (8th ed.2004). The fact that these documents were executed at the same time, using the word "gift" in one context and the word "reimbursement" in another, supports that Decedent understood and intended for the words to have different meanings and effects. *Blue Ridge Bank and Trust Co.,* 207 S.W.3d at 157 (a testator is presumed to know and intend the legal effect of the language he or she uses); *cf. Goulding v. Bank of America, N.A.,* 340 S.W.3d 114 (Mo.App.2010) (settlor's use of "accrue" and "vest," although very similar in meaning, were understood and intended by settlor to have different meanings and effects). Here, the plain and ordinary meanings of "gift" and "reimbursement" are not similar, in that a gift— a transfer of one's property to another without compensation—does not encompass in any respect a reimbursement, which is a right to repayment or to be legally indemnified. Here, Trustee Wild had no right to repayment or legal indemnification from the Insurance Trust as a result of his payment of Decedent's death taxes. While the payment of death taxes may serve to trigger a gift from the Insurance Trust and the amount so paid may serve as a cap upon the amount of that gift, these factors neither give Trustee Wild a right to repayment or of indemnification for such payment nor convert what Decedent expressly described and intended as an "outright gift" into a "reimbursement." [6] Therefore, nothing in the Revocable Trust prohibits Trustee Wild from receiving an outright gift from the Insurance Trust.

■ The Cunninghams' second argument—Decedent's provision in the Revocable Trust that any death taxes be charged against the residue of that trust negates any gift from the Insurance Trust to Trustee Wild—creates an inconsistency and fails to harmonize Decedent's estate-plan documents. Decedent's stated intent and purpose for the Insurance Trust was to use the funds in that trust to ameliorate her beneficiaries' death-tax burden. In stating her intent for the Insurance Trust, Decedent drew no distinction between the various types of beneficiaries in her estate plan; rather, she addressed them in plenary terms. With no foreknowledge as to the amount of her death taxes or what amount, if any, might be available from the Insurance Trust at the time of her death, Decedent allocated the death-tax burden, as between the beneficiaries of the Revocable Trust, to its residuary beneficiaries. Nothing in this limited allocation, however, runs counter to Decedent's broader intent and purpose for the Insurance Trust. To hold otherwise would create an inconsistency, rendering paragraph A of Article VII in the Insurance Trust inoperative and ineffective immediately upon execution, and would result in the residuary beneficiaries of the Revocable Trust bearing the entire death-tax burden, thereby frustrating Decedent's stated intent for the Insurance Trust. On the other hand, interpreting this limited allocation provision in the Revocable Trust as nothing more than that harmonizes the Revocable Trust with paragraph A of Article VII of the Insurance Trust to provide a gift to Trustee Wild in an amount up to the amount paid for Decedent's death taxes, thereby effectuating Decedent's stated intent to ameliorate the

---

**6.** We observe that the amount of Trustee Wild's gift from the Insurance Trust would only equal the amount of the Decedent's death taxes in the event that the distributive amount from the Insurance Trust exceeded the amount of the death taxes so paid.

burden imposed by her death taxes upon her beneficiaries.

Without question, providing for her brother, James H. Wild, during his life was a major objective in Decedent's estate plan. The primary vehicles employed by Decedent to achieve that purpose are the lifetime annuities in his favor in the CRATs funded by the residue of the Revocable Trust.[7] Any strained interpretation of Decedent's estate-planning documents that would place her death-tax burden upon her brother by reducing the funding amount of those CRATs, and thereby his annuities, would not only frustrate Decedent's stated intent for her Insurance Trust but would also frustrate her clear overarching intent to provide for her brother.

In addition, adopting the Cunninghams' interpretation of Decedent's estate-planning documents would create two different results based solely upon the arbitrary distinction as to who ultimately paid the applicable death taxes: if the trustee paid the taxes, such taxes would be paid out of the residue of the Revocable Trust with no ameliorative gift from the Insurance Trust, while, if the individual beneficiaries paid the taxes, the burden of such taxes would be lessened by a gift from the Insurance Trust. These differing results are, to this Court, absurd and are thus to be avoided. *See A.G. Edwards Trust Co.*, 59 S.W.3d at 552.

The first scenario in the preceding paragraph also highlights the crux of Decedent's intent: if the death-tax burden is borne by the residue of the Revocable Trust without any ameliorative gift from the Insurance Trust, then, in addition to the diminution of her brother's annuities, as previously discussed, Decedent's two

charitable beneficiaries—College of the Ozarks and Cottey College—would receive their charitable gifts effectively having been burdened with her estate taxes. Such a result expressly contradicts Decedent's stated intent for the Insurance Trust. As Decedent's intent is our paramount concern, *see First Nat'l Bank of Kansas City*, 363 S.W.2d at 652, such a result is impermissible. Appellants' second point is granted.

### Decision

The trial court's judgment on the pleadings in favor of the Cunninghams is reversed, and the case is remanded to the trial court for further proceedings not inconsistent with this opinion.

BARNEY, P.J., and BURRELL, J., concur.

---

7. Each CRAT provides for an annual annuity payment of five percent of the trust assets to James H. Wild. On the other hand, the residuary provisions of the Insurance Trust provide for discretionary distribution of income and principal to James H. Wild for his life as the trustee determined "to be required for his support, maintenance and health."