

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| **REBECCA LYNN LARSON, ET AL.,** | ) | |
| | ) | |
| **Respondents,** | ) | |
| | ) | |
| **V.** | ) | **WD86359** |
| | ) | |
| **ALVIN WINKLER ET AL.,** | ) | **OPINION FILED:** |
| **Respondents;** | ) | **MAY 28, 2024** |
| | ) | |
| **KEVIN GOUCHER** | ) | |
| **AND ALISA GOUCHER,** | ) | |
| | ) | |
| **Appellants.** | ) | |

**Appeal from the Circuit Court of Henry County, Missouri**
The Honorable Harold Leroy Dump II, Judge

Before Division Three:  Cynthia L. Martin, Presiding Judge, Mark D. Pfeiffer, Judge and
Edward R. Ardini, Jr., Judge

Kevin Goucher ("Goucher") and Alisa Goucher ("Wife") appeal from the trial court's entry of an interlocutory judgment, certified pursuant to Rule 74.01(b),[1] which held that Goucher is not a beneficiary of the Mary Ellen Brown Revocable Trust ("Trust").  Goucher and Wife argue that the trial court erred in holding that Goucher's contingent beneficiary interest divested because the trial court ignored the plain language

---

[1]All Rule References are to *Missouri Court Rules, Volume 1 -- State, 2023* unless otherwise noted.

of the Trust and speculated about the settlor's intent outside the four corners of the Trust. Because the trial court erroneously interpreted the plain language of the Trust, we reverse the trial court's interlocutory judgment, in part, and we enter judgment pursuant to our authority under Rule 84.14.

## Factual and Procedural History

This interlocutory appeal involves a dispute over whether Virgil Keith Winkler's ("Keith")[2] beneficiary interest in the Trust vested in Keith before he died or instead vested in Goucher,[3] a contingent beneficiary, when Keith died.

Mary Ellen Brown ("Brown") as settlor and senior trustee executed the Trust on February 16, 2010. Brown conveyed farmland located in Henry County, Missouri (the "Farm") into the Trust. The Trust named Keith (Brown's son), Rebecca Lynn Larson ("Rebecca") (Brown's daughter), Larry Dale Winkler ("Larry") (Brown's son), and Alvin Winkler ("Alvin") (Brown's son) as beneficiaries.[4] The Trust named Alvin as the first

---

[2]Because multiple parties share surnames, we refer to Brown's children by their first names (or in the case of Virgil Keith Winkler, the name used by the parties in their pleadings) for purposes of clarity. No undue familiarity or disrespect is intended.

[3]Wife is named as a party in the underlying Trust litigation and as an appellant in this appeal to address any interest in the Trust she possesses by virtue of her marriage to Goucher.

[4]Though Alvin is named as a respondent in the caption for this appeal he is actually a named defendant in the underlying litigation. Alvin did not file a separate brief in this appeal but did advise the court that he joins in the position taken in Goucher's brief.

Roger Leroy Larson, Linda Gail Winkler, and Pamela Winkler are also named as parties in the Trust litigation and as respondents in this appeal. However, it is evident from the record that their involvement as parties is to address any interest in the Trust they possess by virtue of their marriages to Rebecca, Larry, and Alvin respectively.

2

successor trustee and Rebecca as the second successor trustee. Upon Brown's death on December 26, 2012, Alvin became the successor trustee of the Trust.

The Trust made express provisions for leasing and ultimate sale of the Farm upon Brown's death. The Trust provided that upon Brown's death "[a]ll of [the Farm] shall be retained by the Trustee and the Trustee shall continue to lease the farmland . . . to Trustee's son Alvin [], under the same terms and conditions as have been followed in the past[.]"[5] The Trust stated that any net income from leasing the Farm was to be distributed to Brown's children in the following proportions: Alvin, 35%; Keith, 30%; Larry, 17.5%; and Rebecca, 17.5%. Finally, the Trust provided that when Keith reached the age of sixty-five the Trustee "shall sell [the Farm] over a reasonable period of time and distribute the net proceeds to [Brown's] children" in the same proportions as [the Farm's] net income. The Trust also provided that upon Brown's death the Farm could be sold earlier if all of Brown's children (or stated beneficiaries in the event of a deceased child) agreed to a sale in writing.

The Trust described how income from leasing, or proceeds from a sale, of the Farm were to be distributed in the event "any of [Brown's] children shall have predeceased [Brown], or not survived until the time of distribution of [the Farm] as set

---

[5]The Trust also contemplated that during his lifetime Brown's husband would be able to continue to reside in a residence on the Farm but that upon the death of Brown's husband (if he had survived Brown) the Trustee was authorized to "retain the residence, rent it, or sell it and a small tract, in [the] Trustee's discretion." The record is silent as to whether Brown's husband survived Brown, and if he did, if and when he died. But it can be reasonably assumed given the issues in dispute that the aforesaid provision of the Trust is no longer relevant because Brown's husband is no longer living.

out above." The Trust directed very specific and unique distributions for each deceased child's share.[6] Relevant to this case, the Trust directed that "if my son Keith [] shall have no issue, then his share shall go to [] Goucher of Warsaw, Missouri."

When Brown died on December 26, 2012, all of her children remained living. Keith reached the age of sixty-five on September 22, 2019, triggering the Trustee's obligation to "sell [the Farm] over a reasonable period of time and distribute the net proceeds to [Brown's] children." On September 23, 2021, Keith died without issue. The Farm had not been sold before Keith's death.[7] Because Keith also died without a spouse or any other lineal descendants his siblings, Rebecca, Larry, and Alvin are his only heirs.[8]

On June 6, 2022, Rebecca, Larry, and their spouses filed an eight-count petition addressing a number of disputes involving the Trust. Relevant to this case, the petition sought a declaratory judgment to determine which (if any) of the challenges raised in the petition would trigger application of the Trust's "no-contest" provision (Count I), and a declaratory judgment "to determine the rights of [Goucher] to distribution of Trust assets" and to correspondingly instruct the Trustee on the distribution of Keith's beneficiary interest in the Trust (Count VI). In addition, the petition sought an equitable accounting; a declaratory judgment that Alvin's actions warranted his removal as trustee; the removal

---

[6]Alvin's share was to be retained in Trust with income paid to his spouse, Pamela, during her lifetime with the share then distributed to Alvin's issue on Pamela's death. Rebecca's share was to go to her issue. Larry's share was to go to his daughter, S.H., "regardless of her adoption by other parties."

[7]The Farm remains unsold as of the time of this appeal.

[8]A probate proceeding to administer Keith's estate is pending. Rebecca is the personal representative of Keith's estate.

of Alvin as trustee; a declaratory judgment clarifying the specific real estate owned by the Trust; modification of the Trust to permit distribution of the Farm directly to the beneficiaries in lieu of a sale; and partition of the real estate owned by the Trust.

Rebecca, Larry, and their spouses requested a bifurcated trial to resolve Count I and Count VI before the remaining claims raised in the petition were determined. They argued that it was necessary to know, in advance, whether the other claims in the petition would violate the "no-contest" provision in the Trust if further pursued. And they argued that it was necessary to determine whether Goucher had a beneficiary interest in the Trust in order to know whether he would need to be a participant in claims addressing distribution of the Farm in kind, or by partition. The trial court granted the request and set Count I and Count VI of the petition for a bifurcated trial on December 30, 2022.

The parties presented a stipulation of facts related to Counts I and VI to the trial court prior to the bifurcated trial. No other evidence was presented during the trial. Instead, during the bifurcated trial Rebecca, Larry, and their spouses argued through counsel that Brown's children's beneficiary interests in the Trust fully vested at the time of Brown's death (with the simultaneous effect of divesting the contingent beneficiary interests identified in the Trust for each Child) and that the Trust provisions requiring the Farm to be leased after Brown's death and then sold after Keith reached the age of sixty-five merely delayed the time at which each of Brown's children could possess and enjoy their fully vested beneficiary rights. They thus argued that Keith's fully vested beneficiary interest was descendible by estate or intestacy and that Keith's interest was

5

required to pass to Keith's heirs (Keith's siblings) through his probate estate and not to Goucher through the Trust.

Goucher's counsel argued that Keith's beneficiary interest did not fully vest upon Brown's death and could not have fully vested unless Keith survived "until the time of distribution of [the Farm]" as provided in the Trust. Since Keith failed to survive until the Farm was sold and the proceeds distributed, Goucher contended that his contingent beneficiary rights vested when Keith died without issue and that he was entitled to take Keith's share under the Trust.[9]

On March 9, 2023, the trial court entered a "Court Order and Interlocutory Judgment" determining Count I of the petition by declaring which of the remaining counts asserted in the petition violated the Trust's "no-contest clause." The court permitted Rebecca, Larry, and their spouses time to further amend the petition in light of the findings.[10] The March 9, 2023 interlocutory order and judgment failed to dispose of Count VI in the petition relating to Keith's and Goucher's status as beneficiaries of the Trust.

---

[9]Prior to the entry of a judgment resolving the bifurcated trial on Counts I and VI in the petition, Rebecca, Larry, and their spouses filed a first and a second amended petition to add additional legal descriptions for real property purportedly held in the Trust. Neither amendment altered the substantive assertions in Counts I and VI.

[10]On May 9, 2023, Rebecca, Larry, and their spouses filed their third amended petition. In accordance with the trial court's determination that the claim violated the Trust's "no-contest clause" they abandoned their request to modify the Trust to permit distribution of the Farm in-kind. However, Rebecca, Larry, and their spouses did not abandon their request to force a partition sale of the Farm. No other claims were abandoned nor were any new claims added in the third amended petition.

The trial court entered an amended "Court Order and Interlocutory Judgment" on April 11, 2023, which repeated the earlier findings with respect to Count I and which added findings to address Count VI of the petition. The trial court did not find, as Rebecca, Larry, and their spouses had argued at trial, that the children's beneficiary interests fully vested on Brown's death. Instead, the trial court found that Brown's intent was for the Farm to be converted into cash "timely after [Keith] turned sixty-five" and that because Alvin (the successor trustee) failed to sell the farm "over a reasonable period of time" after Keith turned sixty-five on September 22, 2019, the children's (including Keith's) beneficiary rights fully vested on an unspecified date sometime after Keith turned sixty-five but before he died on September 23, 2021. The trial court reasoned that had Alvin "performed his duties under the terms of the [T]rust" then the Farm would have been sold "in a reasonable time prior to [Keith's] death and the proceeds would have been available to [Keith] during his lifetime." The trial court thus found that Goucher had been divested of his contingent beneficiary interest on an unspecified date between the time Keith turned sixty-five and his death.

In response to Goucher's motion, the trial court entered its "Second Amended Court Order and Judgment" ("Judgment") on June 15, 2023, to certify its interlocutory rulings on Count I and Count VI of the petition for appeal pursuant to Rule 74.01(b). Goucher filed this appeal from the Judgment and challenges only the trial court's disposition of Count VI.

7

## Appellate Jurisdiction

Before we can address the merits of Goucher's appeal, we must first determine whether interlocutory certification of the Judgment pursuant to Rule 74.01(b) was appropriate and, by extension, whether we have appellate jurisdiction. "The right to appeal is purely statutory and, where a statute does not give a right to appeal, no right exists." *Wilson v. City of St. Louis*, 600 S.W.3d 763, 767 (Mo. banc 2020) (quotation omitted).

Section 512.020(5)[11] provides that "final judgments" are appealable. A "final judgment" is typically any judgment that "resolves all claims by and against all parties, or [] resolves the last such claim and some (but not all) claims have been resolved previously[.]" *Id.* at 768 (quoting *State ex rel. Henderson v. Asel*, 566 S.W.3d 596, 598 (Mo. banc 2019)). However, a judgment that does not resolve all claims by and against all parties can nonetheless be a "final judgment" if it is eligible for certification as an interlocutory appeal pursuant to Rule 74.01(b). Rule 74.01(b) provides, in pertinent part, that: "[w]hen more than one claim for relief is presented in an action . . . the court may enter a judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay." Whether an interlocutory judgment is eligible for certification under Rule 74.01(b) "is a question of law and depends on 'the content, substance, and effect of the order,' not the circuit court's designation." *Wilson*, 600 S.W.3d at 771 (quoting *Gibson v. Brewer*, 952 S.W.2d 239,

---

[11]All statutory references are to RSMo 2016 as supplemented through June 15, 2023.

244 (Mo. banc 1997)). A judgment that resolves one or more but fewer than all claims or parties is eligible for certification as a "final judgment" under Rule 74.01(b) only if it disposes of a "judicial unit" of claims meaning it "(a) disposes of all claims by or against at least one party, or (b) it disposes of one or more claims that are sufficiently distinct from the claims that remain pending in the circuit court." *Id.*

In its Judgment, the trial court found that Goucher's interest as a contingent beneficiary under the Trust was divested because Keith's beneficiary interest vested within a "reasonable time" after he turned sixty-five and before he died. The Judgment's resolution of Count VI fully resolved all claims as to Goucher and, thus, disposed of all claims by or against at least one party.[12] Further, the Judgment's resolution of Count I, which determined whether untried counts in the petition would violate the Trust's "no-contest" provision if pursued, disposed as to all parties a claim that is sufficiently distinct from the claims that remain pending in the trial court. In fact, section 456.4-420 expressly contemplates the assertion of a claim to determine whether other claims violate a "no-contest" provision and provides that the disposition of any such claim "shall be subject to appeal as with other final judgments" including as an interlocutory appeal "in accordance with the applicable rules for taking such an appeal." Section 456.4-420.3.

---

[12]Though Goucher and Wife are conditionally named as defendants in partition claims that remain pending in the underlying lawsuit, their status as proper parties to pending partition claims inherently depended on whether Goucher's contingency beneficiary interest in the Trust divested before Keith's death, an issue that was resolved unfavorably to Goucher by the Judgment.

We thus conclude that the Judgment's disposition of Count I and Count VI of the petition disposed of a distinct "judicial unit" of claims. Under the standard outlined in *Wilson*, the trial court's certification of the Judgment for interlocutory appeal pursuant to Rule 74.01(b) was proper.

## Standard of Review

When reviewing a declaratory judgment our standard of review is the same as in any other court-tried case. *Conservation Comm'n v. Bailey*, 669 S.W.3d 61, 66 (Mo. banc 2023) (citation omitted). We will "affirm the judgment 'unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law[.]'" *ModivCare Solutions, LLC v. Off. of Admin.*, 682 S.W.3d 810, 818 (Mo. App. W.D. 2024) (quoting *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). When the entry of a declaratory judgment involves a question of law, such as the proper interpretation or construction of a trust instrument, our review is *de novo*. *Arthaud v. Arthaud*, 600 S.W.3d 882, 887 (Mo. App. E.D. 2020); *and see Simon v. Myers*, 570 S.W.3d 103, 107 (Mo. App. W.D. 2018) ("[w]e review questions of law, such as the meaning of a trust's provisions, *de novo*") (citation omitted).

## Analysis

Goucher raises two points on appeal challenging the trial court's conclusion that his contingent beneficiary interest in the Trust divested sometime before Keith died because the Farm was not sold within a reasonable amount of time after Keith turned sixty-five. Point One argues that the trial court's conclusion failed to consider the "plain,

10

unambiguous language of the trust instrument to ascertain the settlor's intent."  Point Two

argues that the trial court improperly speculated about Brown's intent outside the four

corners of the trust instrument.  We address the points together.

When determining the meaning of a trust provision "the paramount rule of

construction is that the grantor's intent is controlling and such intention must be

ascertained primarily from the trust instrument as a whole."  *Arthaud*, 600 S.W.3d at 888

(quotation omitted).  "We ascertain the settlor's intent from the 'four corners' of the trust

instrument, reading the instrument as a whole and not giving a particular clause 'undue

preference.'"  *Simon*, 570 S.W.3d at 108 (citing *Blue Ridge Bank & Tr. Co. v. McFall*,

207 S.W.3d 149, 157 (Mo. App. W.D. 2006)).  Furthermore, we presume the grantor

knows and intends the legal effect of the language she uses.  *Estate of Buder*, 658 S.W.3d

168, 176 (Mo. App. E.D. 2022).

Here, the Fourth paragraph of the Trust includes specific instructions for the

Trustee to hold, manage, and distribute all of the property in the Trust upon Brown's

death.[13]  This provision, in relevant part, states:

> 1.  All of [the Farm] shall be retained by the Trustee and the Trustee
> shall continue to lease [the Farm] . . . described in Exhibit "A" attached
> hereto, to Trustee's son Alvin Winkler, under the same terms and conditions
> as have been followed in the past, 1/3 landlord 2/3 tenant after expenses. . .
> .  The net income from the [Farm] shall be distributed to my four children
> in the same proportions as the percentage of distribution as set out below in
> the Paragraph Fourth: 1., on an annual basis, or more frequently at the
> discretion of the Trustee.  ***When my son Keith Winkler shall obtain the
> age of sixty-five (65) my Trustee shall sell [the Farm] over a reasonable
> period of time and distribute the net proceeds to my children***, as follows:

---

[13]The record suggests that the only property that was in the Trust when Brown
died was the Farm.

11

          A.  Alvin Winkler      35%
          B.  Keith Winkler      30%
          C.  Larry Winkler      17.5%
          D.  Rebecca Larson     17.5%

     Notwithstanding the above, the real property may be sold if all of my children, or if there be a deceased child, then his or her beneficiaries as hereinafter described, agree in writing.

     2.  All the rest residue and remainder of my property shall be distributed to my children, in equal shares, per stirpes, upon the death of [Brown]. . . . ***In the event that any of my children shall have predeceased me, or not survived until the time of distribution of [the Farm] as set out above***, . . . if my son [Keith] shall have no issue, then his share shall go to [] Goucher of Warsaw, Missouri . . . .[14]

(Emphasis added).  Goucher argues that the trial court committed legal error when it concluded that a sale of the Farm "over a reasonable period of time" was a condition precedent that had to be satisfied before a contingent beneficiary would be permitted to take the share of any one of Brown's children who died after Keith turned sixty-five.  We agree.

The plain language of the Fourth paragraph of the Trust directs the continued leasing or sale of the Farm upon Brown's death.  The plain language of the Trust directs that income from leasing the Farm and proceeds from a sale of the Farm shall be distributed to Brown's children in the percentages specified.  The plain language of the Trust directs that the Farm "shall" be sold when Keith reaches the age of sixty-five but

---

[14]*See* footnote 6, *supra*, regarding the specific and unique intentions Brown expressed with respect to the intended distribution of each of her children's shares in the Trust in the event a child predeceased Brown or failed to survive until distribution of the Farm.

12

also empowers Brown's children (or, if a child is deceased, that child's beneficiary as described in the Trust) to agree in writing to a sale of the Farm at any time. The plain language of the Trust contemplates that one or more of Brown's children might either predecease her or not survive "until the time of distribution of the [Farm]" in which case specific provisions were made as to whom each deceased child's share was to be distributed. In Keith's case, the Trust plainly states that if Keith shall either have predeceased Brown "or not survived until the time of distribution of the [Farm] as set out above" and if Keith "shall have no issue" at that time "then his share shall go to [Goucher]."[15] The plain language of the Trust conditions Goucher's right to take Keith's share on only two events: Keith dying either before Brown or before "the time of distribution of the [Farm] as set out above," and Keith having no issue at the time of his death. The Trust does not express the intent that a contingent beneficiary's right to take the interest of a deceased child is subject to the Trustee's sale of the Farm "over a reasonable period of time" after Keith turns sixty-five. *See Kerens v. St. Louis Union Trust Co.*, 223 S.W. 645, 648 (Mo. banc 1920) (noting "the well-settled rule frequently recognized in this jurisdiction . . . that wherever it is possible, with a proper regard for the

---

[15]The requirement that Keith die either before Brown or before distribution of the Farm *without issue* rendered Goucher's beneficiary interest unvested until the contingency of Keith's death without issue occurred. *See Blue Ridge Bank and Trust Co.*, 207 S.W.3d at 160 (noting that where a remainder interest is dependent on the death of a stated beneficiary without issue, that language makes the remainder interest contingent and unvested, because the status of dying without issue cannot be determined until the first stated beneficiary dies) (citing *Graves v. Hyer*, 626 S.W.2d 661, 662 (Mo. App. W.D. 1981); *Epley v. Epley*, 585 S.W.2d 308, 309 (Mo. App. W.D. 1979); *First Nat'l Bank of Kansas City v. Sullivan*, 394 S.W.2d 273, 275 (Mo. 1965)).

evident purpose of the trust, such a construction will be given a [trust] as to obviate the creation of an estate subject to a condition, particularly a condition precedent").

In its Judgment, the trial court determined that Goucher's entitlement to Keith's interest was dependent on "[w]hether[] it is unreasonable that [The Farm] was not sold in the two years between [Keith] turning 65 and his death." In doing so, the trial court erroneously conflated a duty imposed on the Trustee to sell the farm "over a reasonable period" after Keith turns sixty-five with Brown's plainly expressed intentions about whom should take under the Trust should one of Brown's children predecease her or die before the Farm was distributed. Although the trial court rationalized that but for the Trustee's purported delay in selling the Farm[16] Keith would have benefitted during his lifetime from the distributed proceeds from the sale of the Farm, the trial court's recognition in this regard underscores that the delay in selling the Farm implicates the Trustee's performance of a duty and not the expression of a condition precedent of a right to take an interest under the Trust.

> Testators and settlors generally do not anticipate every potential future scenario that could affect the degree of their pleasure in the disposition. . . . The courts have no right to make a new will [or trust] for the testator [or settlor]. Courts are to ascertain what the testator meant from the words actually used.

*Blue Ridge Bank and Trust Co.*, 207 S.W.3d at 161.

---

[16]We take no position about whether the purported delay in selling the Farm can or should be viewed as a dereliction of the Trustee's duty, and note again, as is otherwise expressed in this Opinion, that no evidence was presented to the trial court about the purported delay, and that no claim has been asserted in the underlying litigation suggesting the purported delay constituted a violation of the Trustee's duties.

14

In support of our conclusion, two things are noteworthy. First, Rebecca, Larry, and their spouses did not argue at trial that Keith's interest in the Trust vested at some unspecified point after he turned sixty-five and before he died when the delay in selling the Farm became "unreasonable." They argued instead that Keith's (and all of Brown's children's interests) fully vested when Brown died--a position the trial court did not adopt and a position that is facially inconsistent with the plain language of the Trust.[17] Rebecca, Larry, and their spouses repeat this same argument on appeal and rely on the repeated argument to bootstrap a contention that the trial court's Judgment on Count VI should be affirmed. Second, though the trial court acknowledged in the Judgment that determining what is a "reasonable time" to sell property is necessarily "dependent on the circumstances of the individual situation," absolutely no evidence was presented during the bifurcated trial about the events or circumstances that have transpired between the day Keith turned sixty-five and the day he died almost exactly two years later.[18] There

---

[17]Were we to conclude that Brown's children's beneficiary interests fully vested when Brown died, such that the contingent beneficiaries for each child that were carefully identified in paragraph Fourth of the Trust were simultaneously divested of any rights to take under the Trust, the effect would be to render meaningless the express provision in the Trust that a child's share would pass to the beneficiary identified in the Trust if the child died before distribution of the Farm, since distribution of the Farm by sale (whether agreed on by all beneficiaries or as required after Keith turned sixty-five) was only authorized by the Trust *after* Brown died.

In addition, the construction urged by Rebecca, Larry, and their spouses would render meaningless the right bestowed on Brown's children to agree to a sale of the Farm after Brown's death as that right is expressly extended to each child's named beneficiary should the child predecease any such agreement.

[18]Rebecca, Larry, and their spouses acknowledge as much in their brief, noting that evidence would have been required to determine reasonableness, but that in any event the trial court's Judgment should be affirmed because Keith's interest vested when

15

was no evidence whether the Farm was on the market in whole or in part during that time; whether there had been offers to purchase the Farm in whole or in part during that time; whether Alvin as the successor trustee had been in communication with his siblings about plans to sell the Farm during that time; whether Alvin's siblings had complained about a delay in selling the Farm during that time; whether Alvin's siblings agreed to a delay in selling the Farm during that time; whether delaying a sale of the Farm was financially beneficial to the beneficiaries; or as to any other circumstance that might have been relevant to determining whether the failure to sell the Farm between Keith turning sixty-five and his death was "reasonable." And, significantly, although Rebecca, Larry, and their spouses have asserted claims seeking Alvin's removal as the Trustee, they have not alleged wrongdoing related to a purported failure to timely sell the Farm after Keith turned sixty-five.

Putting aside the problematic absence of any evidence in the record to permit the trial court to have determined the "reasonableness" of failing to complete a sale of the Farm in the two years between Keith turning sixty-five and his death, it is plain that this "debate" bears solely on whether the Trustee properly performed a duty imposed by the Trust and not on whether the expressed conditions precedent to Goucher's right to take Keith's interest under the Trust had been satisfied. To that point there is no debate as the parties do not contest that Keith died without issue before the Farm was distributed.

---

Brown died, making his interest no longer subject to distribution to Goucher as a contingent beneficiary. We have already explained why that argument is without merit.

Had Brown intended the contingent interests of beneficiaries who were to take the share of a deceased child to divest if the Farm was not sold within a reasonable time after Keith turned sixty-five, she could have expressly so stated. She did not. It is compelling, in fact, that the carefully crafted, specific, and unique directives in the Trust identifying to whom (and under what circumstances) the share of any deceased child should be distributed do not contemplate any set of circumstances that would result in the surviving siblings taking the interest of a deceased sibling. Yet, the construction of the Trust argued by Rebecca, Larry, and their spouses at trial and the construction of the Trust determined by the trial court yield just that result. In fact, if the trial court's construction of the Trust is accepted then Brown's children would be incentivized to never agree of their own accord to a sale of the Farm and to instead acquiesce in the Trustee "unreasonably" delaying a sale of the Farm after Keith turns sixty-five to ensure that their respective beneficiary interests fully vest before a sale occurs, rendering their beneficiary interests descendible by estate or intestacy without regard to Brown's expressed intentions about where each child's share should go should a child die before the Farm is distributed. *See Alexander v. UMB Bank, NA*, 497 S.W.3d 323, 328-32 (Mo. App. W.D. 2016) (discussing when beneficiary interests are descendible by estate or intestacy of the beneficiary). This was not Brown's intent. *See Estate of Buder*, 658 S.W.3d at 176 (quoting *Commerce Bank, N.A. v. Blasdel*, 141 S.W.3d 434, 444 (Mo. App. W.D. 2004) ("In Missouri, grantors of a trust are 'presumed to have known and intended the legal meaning and effect of the language they employed at the time they were executed'").

17

We find that the trial court's construction of the Trust was legally erroneous. We also find that Rebecca, Larry, and their spouse's alternative argument that Brown's children's beneficiary interests fully vested when Brown died, thus simultaneously divesting the contingent beneficiary interests expressed in the Trust, is not supported by the plain language of the Trust. Instead, we find that when Keith died without issue and before the Farm had been distributed either by the Trustee's sale of the Farm or by mutual agreement of Brown's children or their stated beneficiaries, Goucher's contingent beneficiary interest vested and he became entitled to take Keith's share under the Trust.

The Judgment's disposition of Count VI of the petition is reversed. Pursuant to Rule 84.14 we are required to dispose finally of a case and to give such judgment as the court ought to give unless justice otherwise requires. Here, construction of the Trust is a question of law. The Fourth paragraph of the Trust reflected Brown's plain intent that Goucher take Keith's share under the Trust conditioned only on Keith's death without issue before distribution of the Farm. Those conditions have occurred. It is therefore appropriate for this court to enter judgment on Count VI of the petition declaring that Keith's beneficiary interest in the Trust divested on his death on September 23, 2021, and that Goucher's contingent beneficiary interest in the Trust vested upon Keith's death such that the Trustee is directed to distribute Keith's share under the Trust to Goucher.

Points One and Two are granted.

## Conclusion

The Judgment's disposition of Count VI of the petition is reversed, and in lieu thereof, we enter judgment on Count VI of the petition declaring that Keith's beneficiary

interest in the Trust divested on his death on September 23, 2021, and that Goucher's contingent beneficiary interest in the Trust vested upon Keith's death such that the Trustee is directed to distribute Keith's share under the Trust to Goucher. The Judgment's disposition of Count I of the petition regarding the "no-contest" clause of the Trust has not been appealed and remains in force and effect.


_____
Cynthia L. Martin, Presiding Judge

All concur

19